**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| ALEXANDRIA HAINES, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:24-cv-00710-MWM |
| v. | ) ) | Hon. Matthew W. McFarland |
| CENGAGE LEARNING, INC., | ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT CENGAGE LEARNING, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Cengage Learning, Inc. moves to dismiss the complaint filed by Plaintiff Alexandria Haines pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of Article III standing and failure to state a claim on which relief may be granted under the Video Privacy Protection Act, 18 U.S.C. § 2710.

A memorandum in support accompanies this motion.

Respectfully submitted,

*/s/ Jennifer Snyder Heis*
Jennifer Snyder Heis (0076181) (Trial Attorney)
Kevin M. Bandy (0095721)
UB GREENSFELDER LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
Telephone: (513) 698-5058
Fax: (513) 698-5001
jheis@ubglaw.com
kbandy@ubglaw.com

Matthew C. Wolfe (admitted *pro hac vice*)
SHOOK HARDY & BACON LLP
111 S. Wacker Dr., Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7700
Fax: (312) 558-1195
mwolfe@shb.com

Jenn O. Hatcher (admitted *pro hac vice*)
Kevin M. Cole (admitted *pro hac vice*)
SHOOK HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547
jhatcher@shb.com
kcole@shb.com

***Attorneys for Defendant Cengage Learning, Inc.***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ALEXANDRIA HAINES, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 1:24-cv-00710-MWM |
| v. | ) ) | Hon. Matthew W. McFarland |
| CENGAGE LEARNING, INC., | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD........................................................................................................ 2

ARGUMENT ................................................................................................................. 4

I.      Plaintiff Lacks Article III Standing.................................................................... 4

II.     Plaintiff Fails to Plausibly Allege a VPPA Claim. .......................................... 7

        A.     Plaintiff's Allegations on Personally Identifiable Information are Insufficient. .... 8

               1.    Plaintiff's Allegations Fail to Identify Specific Video Materials. .............. 9

               2.    Plaintiff Does Not Allege that Cengage Disclosed her Identity. .............. 12

               3.    Plaintiff Fails to Adequately Allege a Connection by Cengage of Her Identity and Her Video Watching Behavior. ........................................... 13

        B.     Plaintiff Does Not Adequately Allege that Cengage Knowingly Disclosed Her Video Watching Habits........................................................................... 14

CONCLUSION................................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................3

*Austin-Spearman v. AMC Network Ent., LLC*,
    98 F. Supp. 3d 662 (S.D.N.Y. 2015).................................................................................4

*Cagayat v. United Collection Bureau, Inc.*,
    952 F.3d 749 (6th Cir. 2020) ............................................................................................3

*Edwards v. Learfield Commc'ns, LLC*,
    No. 1:23-cv-65-AW-MAF, 2023 WL 8544765 (N.D. Fla. Oct. 6, 2023)...............................16

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ................................................................................. *passim*

*In re Hulu Priv. Litig.*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) ..................................................................... *passim*

*In re Hulu Priv. Litig.*,
    No. C 11-03764 LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014) ....................................13

*Martin v. Meredith Corp.*,
    657 F. Supp. 3d 277 (S.D.N.Y. 2023).....................................................................9, 10, 11, 12

*Mollett v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) .....................................................................................1, 8

*Moyer v. Gov't Empls. Ins. Co.*,
    114 F.4th 563 (6th Cir. 2024) ...........................................................................................3

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016).....................................................................................2, 8, 10

*Pippin v. JPMorgan Chase Bank, N.A.*,
    Case No. 4:24-CV-00552, 2024 WL 5055190 (N.D. Ohio Dec. 10, 2024) .............................3

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015)..............................................................................10, 13

*Yoder v. Ingersoll-Rand Co.*,
    31 F. Supp. 2d 565 (N.D. Ohio 1997)...............................................................................15

*Yonkov v. Maximus Holding Grp. LLC*,
    No. 1:23 CV 1317, 2024 WL 2302135 (N.D. Ohio May 21, 2024) ..................................2, 3, 5

**Statutes**

Video Privacy Protection Act, 18 U.S.C. § 2710.................................................................. *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ..........................................................2, 3, 5, 16

Federal Rule of Civil Procedure 12(b)(6) .................................................................3, 16

## **INTRODUCTION**

Plaintiff is suing Cengage Learning, Inc. ("Cengage") under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), because of Cengage's purported disclosure of certain information to Meta Platforms, Inc. ("Meta"), formerly known as Facebook. According to Plaintiff, Cengage installed the Meta Pixel on its websites.[1] Plaintiff describes the Meta Pixel as "a unique string of code that companies can embed on their websites and track the actions taken by visitors to their websites and . . . report them back to Meta." Compl. ¶ 45, at PageID 14. She claims that when Plaintiff visited Cengage's website to enroll in its online "Medical Billing and Coding" educational course, Cengage—by way of the Meta Pixel—transmitted her Facebook Identification Number ("FID") and the name of the course to Meta, violating the VPPA.

Plaintiff's allegations are deficient. To adequately plead a claim under the VPPA, "a plaintiff must allege that (1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)" (which provides for consent to disclosure). *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015) (quoting 18 U.S.C. § 2710(b)(1)). Plaintiff's claims should be dismissed for several separate and independent reasons.

As a predicate issue, Plaintiff lacks Article III standing because she fails to allege that she has suffered an injury in fact that is cognizable under the VPPA. Instead of alleging that Cengage disclosed information revealing her to have "watched certain videos," Plaintiff merely alleges that Cengage disclosed the fact of her enrollment in an online educational course to Meta. *Eichenberger*

---

[1] Although Plaintiff identifies two websites, www.ed2go.com and www.miladytraining.com, her allegations only pertain to the former. Accordingly, Plaintiff's claim as it relates to www.miladytraining.com should be dismissed regardless of how the Court disposes of the remainder of Cengage's Motion.

*v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017). This is insufficient to state an injury for Article III standing under the VPPA, and so Plaintiff's Complaint (ECF No. 1, "Complaint or "Compl.") should be dismissed.

Even if this Court were to find that Plaintiff has Article III standing, she has nevertheless failed to plausibly allege a claim under the VPPA. First, Plaintiff has not adequately alleged that Cengage disclosed her personally identifiable information ("PII") as that term is understood under the statute. Courts have interpreted the statutory definition of PII to comprise three elements: the identity of the video materials, the identity of the consumer, and a connection between the two. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 290 (3d Cir. 2016) (hereinafter, "*Nickelodeon*"). Plaintiff's allegations are deficient with respect to all three.

Even if Plaintiff has alleged the disclosure of her PII, which she has not, she fails to sufficiently allege that Cengage knowingly disclosed her PII to Meta. Under the VPPA, "'knowingly' means consciousness of transmitting the private information. It does not merely mean transmitting the code." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (internal quotation marks omitted) (hereinafter, "*Hulu*"). Plaintiff's allegations do not demonstrate that Cengage had any knowledge of whether Plaintiff had an FID and, therefore, whether Plaintiff's FID would be transmitted to Meta. Plaintiff fails to allege that Cengage ever had, or could have had, Plaintiff's FID, or that Cengage had any knowledge that Meta would combine Plaintiff's FID with any of Cengage's products or services so as to gain insight into any alleged video watching behavior.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), this Court "lacks subject-matter jurisdiction over a claim—and thus the claim is subject to dismissal—if the plaintiff fails to show that he has standing to bring it." *Yonkov v. Maximus Holding Grp. LLC*, No. 1:23 CV 1317, 2024

WL 2302135, at *2 (N.D. Ohio May 21, 2024) (citations omitted). To establish standing, Plaintiff bears the burden to show she "(1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; (3) that is likely to be redressed by a favorable judicial decision." *Id*. At the pleading stage, "the plaintiff must clearly allege facts demonstrating each element." *Id*. Where, as here, a defendant makes a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), the Court may rely on evidence outside the complaint. *Id*.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory allegations are not entitled to the presumption of truth on a motion to dismiss, and a plaintiff "armed with nothing more than conclusions," "labels," or "[t]hreadbare recitals of the elements of a cause of action" fails to state a claim. *Id*. at 678-81 (citation omitted). Additionally, "if the pleadings internally contradict verifiable facts central to a plaintiff's claims, that makes the plaintiff's allegations implausible." *Cagayat v. United Collection Bureau, Inc.*, 952 F.3d 749, 755 (6th Cir. 2020) (quoting *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017)). In making this determination, "[a] district court may consider documents submitted by the defendant without converting a motion to dismiss to a motion for summary judgment if they are 'referred to in the pleadings' and 'integral to the claims.'" *Moyer v. Gov't Empls. Ins. Co.*, 114 F.4th 563, 568 (6th Cir. 2024) (quoting *Bash v. Textron Fin Corp.*, 834 F.3d 651, 657 n.1 (6th Cir. 2016)). Although a court must generally accept all well-pled facts as true, if a document referenced in the complaint . . . contradicts the factual allegations in the complaint, the document 'trumps the allegations.'" *Pippin v. JPMorgan Chase Bank, N.A.*, Case No. 4:24-CV-00552, 2024 WL 5055190, at *3 (N.D. Ohio Dec. 10, 2024) (quoting *Amir v. AmGuard Ins. Co.*, 606 F. Supp. 3d 653, 664 (E.D. Mich. 2022)).

## ARGUMENT

**I.**      **Plaintiff Lacks Article III Standing.**

Plaintiff lacks Article III standing because she has not suffered an injury in fact under the VPPA. The VPPA "protects generally a consumer's substantive privacy interest in his or her **video-viewing history."** *Eichenberger*, 876 F.3d at 983 (emphasis added); *see also Austin-Spearman v. AMC Network Ent., LLC*, 98 F. Supp. 3d 662, 666 (S.D.N.Y. 2015) ("In essence, the VPPA creates a right to the privacy of one's video-watching history . . . ."). Plaintiff claims the Meta Pixel resulted in Cengage transmitting "Private Viewing Information" to Meta, which Plaintiff correctly defines as information "reveal[ing] [that] a particular person purchased a subscription to access prerecorded video content or a specific title of a prerecorded video on Defendant's Websites." Compl. ¶ 4, at PageID 2-3. However, Plaintiff alleges, at most, that the Meta Pixel transmitted that she had paid for *enrollment in an online educational course* entitled "Medical Billing and Coding" – which is not purely a video-based course, but also includes books, study guides, and other materials.[2] This does not invoke the substantive privacy interest codified by the VPPA. *Eichenberger*, 876 F.3d at 983.

Trying to get around this fact, Plaintiff broadly asserts the transmission of prerecorded video material by Cengage. *See* Compl. ¶¶ 13-14, at PageID 4-5 ("[W]hen Plaintiff purchased the "Medical Billing and Coding online course, the course type, specific title and URL of the prerecorded video material, and her request to 'ENROLL NOW' to complete her purchase was transmitted to Meta alongside Plaintiff's FID . . . ."). But Plaintiff's allegations fail to demonstrate that the specific title of a single video was disclosed to Meta. Quite tellingly, Plaintiff's own screenshot fails to include the title or URL of *any prerecorded video material*, instead showing

---

[2] *See* Ed2go, *Medical Billing and Coding (Voucher Included)*, https://www.ed2go.com/courses/health-and-fitness/medical/ctp/medical-billing-coding-voucher-included#outline (last visited Jan. 17, 2025).

only the name of a course in which she enrolled. *See* Compl. ¶ 14, at PageID 5. Just as telling, Plaintiff does not identify the title of *any specific video material* she alleges to have purchased or accessed through Cengage's website; instead, she identifies the name of an educational course in which she enrolled. *Id*. at ¶¶ 11, 13, 15, at PageID 4-6.

The reason for these significant gaps in her pleading becomes clear upon inspection of the website that allegedly caused the disclosure of her information to Meta—an action which the court may undertake when resolving a factual challenge to subject-matter jurisdiction under Rule 12(b)(1). *Yonkov*, 2024 WL 2302135, at *2. Paragraph 13 of the Complaint (at Page ID 5) includes an alleged screenshot of the source code allegedly responsible for sending Plaintiff's PII to Meta. That source code identifies the relevant webpage as "https://www.ed2go.com/courses/health-and-fitness-medical/ctp/medical-billing-coding-voucher-included". But the very webpage Plaintiff references here does not actually transmit any "specific title and URL of . . . prerecorded video material," as is demonstrated by the webpage itself:



CONTACT US  for additional information

DETAILS + OBJECTIVES    OUTLINE    INSTRUCTORS & SUPPORT    REQUIREMENTS    MORE ABOUT    FAQ    RELATED COURSES

## Details + Objectives
Course code: GES1014

**What you will learn**

- Get a better understanding of the value this course provides from our **medical billing and coding certification video** overview
- Medical coding terminology is required for medical coding, including the structures and functions of the human body
- The disorders and medical procedures common to each body system
- Legal, ethical, and regulatory concepts central to the field, including HIPAA compliance and third-party guidelines for filing insurance claims
- The main coding manuals: ICD-10-CM, ICD-10-PCS, CPT, and HCPCS Level II
- How to code diagnoses, services, and procedures for all systems of the body
- Fundamentals of medical billing and coding and medical terminology
- Word parts and the structures and functions of the human body
- Hands on exposure to an encoder application: Codify (AAPC)

**How you will benefit**

- Get hands-on, practical experience in medical billing and coding that will help you on the job
- Receive a Certificate of Completion and an exam voucher for the professional exam of your choice
- Receive access to study materials and prepare to sit for the medical billing and coding certification exam that best aligns with your interest and career goals:
    - Certified Professional Coder (CPC) exam offered by the American Academy of Professional Coders (AAPC)
    - Certified Coding Associate (CCA) exam offered by the American Health Information Management Association (AHIMA)
    - Certified Billing and Coding Specialist (CBCS) exam offered by the National Healthcareer Association (NHA)

**How the course is taught**

- Self-paced, online course
- 12 Months to complete
- Open enrollment, begin anytime
- 370 course hours

## Outline

∧ **DETAILS**

I. Medical Terminology
    A. Getting Started
    B. How to Take This Course
    C. Test-Out Exam 1: Lessons 1–Midterm Exam
    D. Introduction to Medical Terminology and the Human Body in Health and Disease
    E. The Musculoskeletal System
    F. The Cardiovascular System
    G. The Lymphatic and Immune Systems
    H. The Respiratory System
    I. The Digestive System
    J. The Urinary System
    K. Midterm
    L. Test-Out Exam 2: Lessons 8–Final Exam
    M. The Nervous System
    N. Special Senses: The Eyes and Ears
    O. The Integumentary System
    P. The Endocrine System
    Q. Mental Health
    R. Male and Female Reproductive Systems
    S. Diagnostic Procedures, Nuclear Medicine, and Complementary Medicine
    T. Final Exam
II. Medical Billing and Coding
    A. Introduction to Medical Billing and Coding
        1. Career Opportunities
        2. Personal and Technical Qualifications
        3. Employment Settings
        4. Telecommunications
        5. Professional Certifications
    B. Introduction to Health Insurance
        1. Health Insurance Terminology

## Requirements

**Prerequisites:**

There are no prerequisites to take this course.

**Certification Requirements:**

In order to sit for national certification exams, candidates must have a high school diploma or equivalent. Therefore, it is recommended you have this before enrolling in this course. *Certification exams offered by AAPC and NHA are only available online to candidates located in the US. AHIMA only offers in-person exams in both the US and Globally.*

**Requirements:**

Hardware Requirements:

- This course can be taken on either a PC, Mac, or Chromebook.

Software Requirements:

- PC: Windows 8 or later.
- Mac: macOS 10.6 or later.
- Browser: The latest version of Google Chrome or Mozilla Firefox is preferred. Microsoft Edge is also compatible.
- Microsoft Word or equivalent (not included with enrollment)
- Adobe Acrobat Reader.
- Software must be installed and fully operational before the course begins.

Other:

- Email capabilities and access to a personal email account.

**Instructional Material Requirements:**

The instructional materials required for this course are included in enrollment.

The following digital textbook for the Medical Terminology course is accessed via links in the course lessons:

- *Comprehensive Medical Terminology for Health Professions, 1st Edition* (eBook)

The following digital textbooks for Medical Billing and Coding are accessed via links in the course lessons:

- *Understanding Health Insurance: A Guide to Billing and Reimbursement,* by Michelle A. Green

Notably, included on the page are profiles of the instructors, an outline of the course topics, and a list of the "textbooks" and other course materials (but without reference to any video material included in the course) that will be "shipped" to an enrollee following enrollment in the class. This webpage simply serves as the landing page for prospective students to learn more about a course and enroll should they decide to do so. Plaintiff's alleged injury, then, is outside of the "context-specific extension of the substantive right to privacy" that the VPPA codifies because there are no video titles listed or referenced that could have been disclosed. *Eichenberger*, 876 F.3d at 983.

## II. Plaintiff Fails to Plausibly Allege a VPPA Claim.

In the alternative, Plaintiff's allegations fall far short of what is required to plead a claim under the VPPA. To state a claim, "a plaintiff must allege that (1) a defendant is a 'video tape service provider," (2) the defendant disclosed 'personally identifiable information concerning any

customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized. *Mollett*, 795 F.3d at 1066 (quoting 18 U.S.C. § 2710(b)(1)). To begin, Plaintiff does not plausibly plead that personally identifiable information was disclosed because the facts as alleged do not do any of these three things: (1) identify specific video materials, (2) demonstrate that it was *her* identity disclosed, and (3) establish a connection between the video material and her identity.

### A.      Plaintiff's Allegations on Personally Identifiable Information are Insufficient.

The VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained ***specific*** video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3) (emphasis added). This definition necessarily contains three requirements: that the information identifies (1) particular video materials and video services; (2) a particular person; and (3) a connection between the two, e.g., that the particular person watched, requested, or received those specified video materials. *See Nickelodeon*, 827 F.3d at 290 ("[P]ersonally identifiable information under the Video Privacy Protection Act means the kind of information that would readily permit an ***ordinary person*** to identify a specific individual's video-watching behavior."); *Eichenberger*, 876 F.3d at 985 (citing *Nickelodeon* and expressly adopting the standard that the information must "readily permit[]an ordinary person to identify a particular individual as having watched certain videos") (internal quotation marks omitted)). The court in *Hulu* may have said it best:

> There are, in other words, three distinct elements here: the consumer's identity; the video material's identity; and the connection between them. The point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to ban the disclosure of information connecting a certain user to certain videos.

86 F. Supp. 3d at 1095.

With an understanding of the three elements required for information to be considered PII under the VPPA, the question then becomes whether Plaintiff has adequately alleged facts about each element. Here, Plaintiff's allegations are insufficient with respect to all three.

### 1. Plaintiff's Allegations Fail to Identify Specific Video Materials.

Despite it being the most crucial element to a VPPA claim, Plaintiff fails to adequately allege that any information allegedly disclosed to Meta identified specific video materials or services. *See Eichenberger*, 876 F.3d at 985 (holding that PII "means only . . . information that would 'readily permit an ordinary person to identify a specific individual's **video-watching behavior**'") (quoting *Nickelodeon*, 827 F.3d at 267) (emphasis added)). Instead, what she references amounts only to her visit to a webpage, with no video content within, in order to purchase an online course entitled "Medical Billing and Coding." *See, e.g.*, Compl. ¶¶ 10, 13 at PageID 4. In order to support a claim, "the VPPA requires that the information disclosed identify a person 'as having requested or obtained *specific video materials or services* from a video tape service provider.'" *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023) (quoting 18 U.S.C. § 2710(a)(3)) (emphasis added). Plaintiff's failure to do so is fatal to her claim.

In the Meta Pixel context, the decision in *Martin v. Meredith Corporation* is instructive. 657 F. Supp. 3d at 284. In *Martin*, the "basis for the plaintiff's [VPPA] claim [was] People.com's use of the Facebook Pixel." *Id.* According to the plaintiff, People.com's website had a version of the Facebook Pixel that transmitted only "the Facebook ID and the name of the webpage that a user accessed," in violation of the VPPA. *Id.* The court disagreed that this alleged disclosure could constitute a violation of the VPPA, concluding that "essential information for a VPPA claim" was missing from plaintiff's allegations, such as:

> (1) whether the webpage contains a video; (2) if so, the name of the "specific video materials" on the page; (3) whether there are multiple videos on the page and, if so, which "specific video materials" were requested or obtained by the website visitor;

and (4) whether the website visitor "requested or obtained" any videos at all, or instead merely read an article on the webpage.

*Id.* The court consequently dismissed the plaintiff's VPPA claims.

Plaintiff's allegations suffer from the same infirmities. Despite her assertion otherwise, a subscription to broadly access an online educational course, without more, is not tantamount to a disclosure of "a specific individual's video-watching behavior." *See Eichenberger*, 876 F.3d at 985. Plaintiff wholly fails to identify "the name of the 'specific video materials'" contained within the course and similarly fails to allege "whether there are multiple videos" included within it, "and, if so, which 'specific video materials' were requested or obtained by the website visitor." *Martin*, 657 F. Supp. 3d at 284. The simple fact of enrollment in an online educational course is far afield of the types of information the VPPA was designed to protect from unauthorized disclosure. To hold otherwise would be akin to finding that disclosure of Plaintiff's enrollment in an in-person course entitled "Medical Billing and Coding" at a local university somehow violated the VPPA. Courts regularly refuse to interpret the meaning of PII under the VPPA in a way that would render the definition limitless. *See, e.g.*, *Nickelodeon*, 827 F.3d at 383 ("We do not think that, when Congress passed the [VPPA], it intended for the law to cover factual circumstances far removed from those that motivated its passage."); *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 181 (S.D.N.Y. 2015) ("If nearly any piece of information can, with enough [effort] on behalf of the recipient, be combined with other information so as to identify a person, then the scope of PII would be limitless."). The Court should resist Plaintiff's attempt to dramatically expand the scope of the VPPA beyond its logical limits.

Notably, the very screenshot on which Plaintiff relies on in her Complaint contradicts her allegations and undercuts the entire basis for her VPPA claim. The following screenshot of a URL was included in Plaintiff's Complaint:

| | |
|---|---|
| Request URL: | https://www.facebook.com/privacy_sandbox/pixel/register/trigger/?id=1437036116561317&ev=SubscribedButtonClick&dl=https%3A%2F%2Fwww.ed2go.com%2Fcourses%2Fhealth-and-fitness%2Fmedical%2Fctp%2Fmedical-billing-coding-voucher-included&rl=https%3A%2F%2Fwww.ed2go.com%2Fsearch%3Fterm%3Dmedical%2Bcoding%2CcourseTypes%3Dadvanced-career-training&if=false&ts=1729792198301&cd[buttonFeatures]=%7B%22classList%22%3A%22font-weight-bold%20px-5%20text-uppercase%20btn%20btn-success%22%2C%22destination%22%3A%22https%3A%2F%2Fwww.ed2go.com%2Fenrollment%2Faddtocart.aspx%3Fitem%3DGES1014!pierce-wa%22%2C%22id%22%3A%22checked-enrollment-btn%22%2C%22imageUrl%22%3A%22%22%2C%22innerText%22%3A%22ENROLL%20NOW%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22a%22%2C%22type%22%3Anull%2C%22name%22%3A%22%22%7D&cd[buttonText]=ENROLL%20NOW&cd[formFeatures]=%5B%5D&cd[pageFeatures]=%7B%22title%22%3A%22Medical%20Billing%20and%20Coding%20(Voucher%20Included)%22%7D&cd[parameters]=%5B%5D&sw=3008&sh=1692&v=2.9.174&r=stable&a=tmgoogletagmanager&ec=2&o=4126&fbp=fb.1.172972286966 1.37608366883583979&cs_est=true&ler=empty&cdl=API_unavailable&it=1729792195650&coo=false&es=automatic&tm=3&rqm=FGET |
| Request Method: | GET |
| Status Code: | ● 200 OK |
| Remote Address: | 31.13.67.35:443 |
| Referrer Policy: | strict-origin-when-cross-origin |

Compl. ¶ 13, at PageID 4-5. It is difficult to parse what, if any, information on Plaintiff's video-watching behavior is revealed by the alleged disclosure of this URL to Meta. As the court in *Martin* stated:

> Simply sending a URL of a People.com webpage which may or may not include a video does not show that a person requested or obtained specific video materials or services. And even for webpages including a video, sending the URL does not identify a person as having requested or obtained the video on that page since the person may instead have merely reviewed an article on the page or opened the page and done nothing more.

*Id.* at 285. Here, if anything, the URL merely supports the assertion that Plaintiff enrolled in a medical billing and coding course. This URL could link to a webpage "which may or may not include a video," (it doesn't) and, even assuming that the webpage includes a video (which it does

not), "sending the URL does not identify a person as having requested or obtained the video on that page." *Martin*, 657 F. Supp. 3d at 285.

The VPPA simply does not protect against the type of disclosure alleged in the Complaint—nor was it ever intended to do so. Plaintiff's claims, then, should be dismissed.

### 2. Plaintiff Does Not Allege that Cengage Disclosed her Identity.

Even if Plaintiff had alleged specific video materials, her claim fails for failure to identify a specific person. "A claim under the VPPA requires that the information disclosed identify a person 'as having requested or obtained specific video materials or services from a video tape service provider.'" *Id.* (quoting 18 U.S.C. § 2710(a)(3)). Plaintiff alleges that Cengage's use of the Meta Pixel on certain pages of its websites caused her FID to be transmitted to Meta. To begin, this is insufficient, because the "ordinary person" would not be able to "identify an individual [with this information] unless it is combined with other data" in Meta's possession. *Eichenberger*, 876 F.3d at 985. Further, Plaintiff does not plausibly plead that Cengage ever had her FID in its possession. *See id.* at 985-86 ("Plaintiff alleges that Defendant disclosed to Adobe (1) his Roku device serial number and (2) the names of the videos that he watched. As Plaintiff concedes, that information *cannot* identify an individual unless it is combined with other data in Adobe's possession—data that [Defendant] never disclosed and apparently never even possessed."). Although Plaintiff sidesteps the issue by failing to allege how the Meta Pixel operates in relation to her browser, the conditions that were required for her FID to have been transmitted to Meta— including whether any Cengage website visitor was a Facebook user, was logged in to Facebook, had their browser configured to allow cookies, or had the c_user cookie installed on their browser—were never visible to Cengage. *See In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 2758598, at*21-22 (N.D. Cal. June 17, 2014) (explaining that whether users had logged into Facebook and installed certain cookies on their browsers (or instead, blocked such cookies) could

affect whether disclosures occurred via the necessary c_user cookie). "Indeed, the most natural reading of PII suggests that it is the information actually disclosed by a video tape service provider, which must itself do the identifying that is relevant for purposes of the VPPA (literally, information which identifies)—not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties." *Robinson*, 152 F. Supp. 3d at 182 (internal citation and quotation marks omitted). Plaintiff's theory that Cengage somehow disclosed her identity through its passive use of the Meta Pixel, then, fails.

### 3. Plaintiff Fails to Adequately Allege a Connection by Cengage of Her Identity and Her Video Watching Behavior.

Finally, for the third element of PII, Plaintiff has failed to adequately allege that the information purportedly transmitted by Cengage linked or connected Plaintiff with any specific video materials. Plaintiff theorizes that Cengage's alleged decision "to install the Meta Pixel on its website" was sufficient for Meta to be able to link Plaintiff's identity to the subscription to the Medical Billing and Coding online educational course. Compl. ¶ 59, at PageID 16. This is lacking, because the Complaint fails to allege that Cengage—the alleged discloser of the PII—combined the information (Plaintiff's identity and her request for specific video materials) and then transmitted it to Meta.

Plaintiff's proffered theory was rejected in *Hulu*, in which the plaintiffs alleged that "Hulu wrongfully disclosed their video viewing selections and personal-identification information to . . . Facebook" in violation of the VPPA. 86 F. Supp. 3d at 1091. There, if a Hulu viewer loaded the watch page for a particular program, the "c-user cookie" would "prompt the user's browser to send Facebook both the user's numeric Facebook ID (from the c_user cookie) and the title of the video that the user was watching (contained in the Hulu watch-page address)." *Id.* at 1094. The court rejected the assertion that the transmittal of the Facebook ID and the title of the video (through the

watch-page web address) satisfied the requirement that the disclosing party must reveal a *connection* between the person identified and the video watched:

> This case is different. The user's identity and that of the video material were transmitted separately (albeit simultaneously). By sending those two items Hulu did not thereby connect them in a manner akin to connecting Judge Bork to his video-rental history; that is, Hulu did not disclose information that "identifie[d] a person as having requested or obtained specific video materials." Unlike in the paradigmatic Judge Bork case, **the connection here would be established, if at all, by an act of the recipient**. This means that, even if both elements were sent to Facebook, they did not necessarily disclose a user "as having requested or obtained specific video materials" unless Facebook combined the two pieces of information. **Without Facebook forging that connection there is no "disclosure" of "personally identifiable information" under the terms of the VPPA**.

*Id.* at 1096 (emphasis added). Here, just as in *Hulu*, Cengage's alleged transmittal of information to Meta did not include a connection of Plaintiff's identity with the request for specific video materials. By Plaintiff's own allegations, if such a connection was made, it was done so by the recipient of the disclosure—Meta. Plaintiff does not (and cannot) allege that Cengage ever had knowledge of Plaintiff's FID (nor even if she had one). Plaintiff concedes as much, because her own allegations state that *Meta*, *not Cengage*, can "match [] website visitors to their respective Facebook User accounts." Compl. ¶ 46, at PageID 14.

In sum, Plaintiff's allegations fail to satisfy the three distinct elements of PII as that term is understood under the VPPA. Her claims, then, should be dismissed.

## B. Plaintiff Does Not Adequately Allege that Cengage Knowingly Disclosed Her Video Watching Habits

In any event, Plaintiff fails to adequately allege the mens rea requirement—that Cengage *knowingly* disclosed her identity, the identity of specific video materials, and the fact of her having requested, accessed, or watched those specific video materials. *See* 18 U.S.C. § 2710(b)(1) ("A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person . . . ."). "[T]he term 'knowingly' connotes actual knowledge. It is not enough . . . that a

disclosure be merely 'voluntary' in the minimal sense of the defendant's being aware of what he or she is doing and not acting because of some mistake or accident." *Hulu*, 86 F.Supp.3d at 1095. Plaintiff's allegations on this point are insufficient for at least three reasons.

First, as discussed above, nowhere in the Complaint does Plaintiff allege that Cengage ever possessed her FID. This omission is fatal to her claim because a party cannot disclose information that it does not itself have. *See Eichenberger*, 876 F.3d at 986 (rejecting VPPA claim where the defendant "never disclosed and apparently never even possessed" the information that would allow a third party to identify an individual); *Yoder v. Ingersoll-Rand Co.*, 31 F. Supp. 2d 565, 571 (N.D. Ohio 1997) (granting motion for summary judgment against invasion of privacy claim where defendant did not know it had received a confidential medical record, and noting "[i]t is a logical impossibility for a party intentionally to disclose information that it does not know it has."). Plaintiff only alleges that Cengage knew that the Meta Pixel (which would be on *Plaintiff*'s web browser) would send Meta the FID of users who subscribed to Cengage courses—not that Cengage affirmatively identified any particular customer by name or released PII in any other form to Meta. Compl. ¶¶ 4, 67, at PageID 2-3, 18. Plaintiff does not allege, nor could she, that Cengage is the entity that transmits an FID to Meta. In turn, Plaintiff has not alleged that Cengage itself disclosed PII, and if Cengage did not disclose the only identifying information alleged in the Complaint, it could not have knowingly disclosed PII, as required for a VPPA claim. 18 U.S.C. § 2710(b)(1).

Second, Plaintiff does not allege that Cengage knew that Meta would take the additional step of identifying her with the FID *and* linking her to the specific video materials she requested, obtained, or viewed from Cengage—in other words, knowledge that Meta would "forg[e] that connection." *Hulu*, 86 F. Supp. 3d at 1096. Indeed, she does not allege that Cengage "ever used, or even [could] use, *their* [FIDs] to identify *them* or *their* video-watching habits." *Edwards v. Learfield Commc'ns, LLC*, No. 1:23-cv-65-AW-MAF, 2023 WL 8544765, at *7 (N.D. Fla. Oct.

6, 2023); *see also Hulu*, 86 F. Supp. 3d at 1093 n.3 ("The only servers that can access a particular cookie are those associated with the domain that wrote the cookie.").

Finally, Plaintiff fails to allege that, when she registered for the Medical Coding and Billing course material, Cengage had any knowledge of whether she even had a Facebook profile and FID and, if she did, whether it knew that such a profile actually contained personally identifying information (e.g., her actual name, place of residence, birthdate, etc.). Indeed, Plaintiff only alleges that she "had a Meta account, a Meta profile, and an FID associated with such profile." Compl. ¶ 11, at PageID 4. She does not allege that her profile contained any personally identifying information whatsoever. Therefore, even assuming Plaintiff has adequately alleged that Cengage disclosed her PII to Meta (which is denied) she has not—and cannot—allege that Cengage did so knowingly. Her claims, then, can also be dismissed on this basis.

## CONCLUSION

Plaintiff lacks Article III standing because her alleged injury—that Cengage disclosed the fact of her enrollment in a medical billing and coding course—is not cognizable under the VPPA. As such, dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure is proper. Assuming she has standing, Plaintiff has failed to plausibly allege that (1) her PII was transmitted to Meta, and (2) Cengage knowingly transmitted her PII to Meta. She has therefore failed to state a claim under the VPPA, and her Complaint should similarly be dismissed pursuant to Rule 12(b)(6).

16

Dated: January 24, 2025                    Respectfully submitted,

                                            */s/ Jennifer Snyder Heis*
                                           Jennifer Snyder Heis (0076181) (Trial Attorney)
                                           Kevin M. Bandy (0095721)
                                           UB GREENSFELDER LLP
                                           312 Walnut Street, Suite 1400
                                           Cincinnati, OH 45202
                                           Telephone: (513) 698-5058
                                           Fax: (513) 698-5001
                                           jheis@ubglaw.com
                                           kbandy@ubglaw.com

                                           Matthew C. Wolfe (admitted *pro hac vice*)
                                           SHOOK HARDY & BACON LLP
                                           111 S. Wacker Dr., Suite 4700
                                           Chicago, IL 60606
                                           Telephone: (312) 704-7700
                                           Fax: (312) 558-1195
                                           mwolfe@shb.com

                                           Jenn O. Hatcher (admitted *pro hac vice*)
                                           Kevin M. Cole (admitted *pro hac vice*)
                                           SHOOK HARDY & BACON LLP
                                           2555 Grand Blvd.
                                           Kansas City, MO 64108
                                           Telephone: (816) 474-6550
                                           Fax: (816) 421-5547
                                           jhatcher@shb.com
                                           kcole@shb.com

                                           ***Attorneys for Defendant Cengage Learning, Inc.***

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2025, I electronically filed the foregoing **MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of the Court using the CM/ECF System.

*/s/ Jennifer Snyder Heis*
Attorney for Defendant Cengage Learning, Inc.