**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**CINCINNATI DIVISION**

| | |
|---|---|
| ALEXANDRIA HAINES, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. 1:24-cv-00710-MWM |
| v. | |
| CENGAGE LEARNING, INC., | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Alexandria Haines, by and through undersigned counsel, submits her opposition to Defendant's Motion to Dismiss. *See* Defendant's "Motion to Dismiss" ("Motion" or "Mot."), Doc. 10.

## I.     **INTRODUCTION**

Plaintiff brings this consumer class action against Defendant for violation of consumers' privacy rights as established by the Video Privacy Protection Act ("VPPA").

Defendant's customers pay for subscriptions to access prerecorded videos and stand-alone prerecorded videos on various educational topics. To increase its customer base and boost sales in the two years preceding the filing of this action, Defendant knowingly installed Meta Platforms, Inc.'s ("Meta") programming code known as the Meta Pixel on its Websites, which regularly disclosed consumers' personally identifiable information to Meta. Plaintiff alleges that Defendant's disclosures of her (and numerous others) personally identifiable information violated the VPPA. *See* 18 U.S.C. § 2710(b)(1). The information disclosed by the Meta Pixel constitutes "personally identifiable information" within the meaning of the VPPA because it specifically identifies each customer by name and automatically connects the person's name to the specific title and corresponding URL of the prerecorded video content or subscription requested or obtained from Defendant's websites. *See* 18 U.S.C. § 2710(a)(3) ("the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider").

Defendant has now moved to dismiss the Class Action Complaint (the "Complaint") on two grounds: *first*, that Plaintiff lacks standing because Cengage's disclosure of "the fact of her enrollment in an online educational course to Meta" is not actionable under the VPPA, and *second*, that Plaintiff allegations concerning personally identifiable information ("PII") and Cengage's

scienter are insufficient to state a claim under the VPPA. Defendant's Motion is entirely without merit. The Complaint's allegations demonstrate that Plaintiff has standing because she purchased an online prerecorded video course from Defendant's www.ed2go.com website and Defendant disclosed that purchase to Meta via the Meta Pixel, which disclosure has been routinely found to be sufficient under the VPPA. *See Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 549 (N.D. Ohio 2024) (finding Article III standing and explaining that such a conclusion is supported by "every federal circuit court that has considered the issue. . . [and] [t]he outcome here is no different.") (internal citations omitted).

Defendant's alternative Rule 12(b)(6) argument also lacks merit and should be rejected. Defendant's argument ignores the Complaint's well-pled allegations describing Defendant's knowing and intentional disclosures of PII to Meta.

## II.     APPLICABLE LEGAL STANDARD

**Rule 12(b)(1)**:"Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the court must determine whether the moving party seeks to "challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Doster v. Kendall*, 615 F. Supp. 3d 741, 746 (S.D. Ohio 2022) (citations omitted). "In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014). For a facial attack, the court must however "accept the allegations set forth in the complaint as true" while "drawing

2

all inferences in favor of the plaintiff," just as it would do "in reviewing a 12(b)(6) motion to dismiss for failure to state a claim." *Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023), *cert. denied*, No. 23-1084, 2024 WL 4426549 (U.S. Oct. 7, 2024). "A plaintiff need only demonstrate a plausible entitlement to standing" at the pleading stage. *See id*.

**Rule 12(b)(6)**: In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). "Generally, in considering a motion to dismiss, the district court is confined to considering only the pleadings." *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023). To survive dismissal, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff meets this standard by alleging "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Jones v. Ohio Dep't of Pub. Safety*, No. 2:22-CV-3692, 2024 WL 495529, at *4 (S.D. Ohio Feb. 7, 2024).

### III. ARGUMENT

### A. Plaintiff has Article III Standing

To establish Article III standing, a plaintiff must allege an "irreducible constitutional minimum" of an "injury-in-fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Injury in fact is a low threshold." *See Ross v. Bank of Am., N.A.*, 524 F.3d 217, 222 (2d Cir. 2008). A concrete harm is one that is real and not abstract—*i.e.*, it "actually exist[s]." *Dickson v.*

*Direct Energy, LP*, 69 F.4th 338, 343 (6th Cir. 2023). "Notably, an injury need not necessarily be tangible (e.g., physical or monetary) to be concrete; intangible harms can create Article III standing." *See id*. Because Congress has decided to create various statutory causes of action, this fact alone elevates some injuries "to the status of legally cognizable injuries" so long as those injuries actually exist in the real world. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). "To determine whether an intangible harm . . . rises to the level of a concrete injury, courts may look to (1) history and tradition and (2) Congress's judgment in enacting the law at issue." *See Dickson*, 69 F.4th at 343. Plaintiff has adequately alleged each element necessary for Article III standing, but because Defendant only challenges the "injury-in-fact" element, only that element is addressed below.

Plaintiff adequately alleges an injury-in-fact. The Complaint alleges that "[d]uring the purchase process on Defendant's Websites, Defendant uses – and has used at all times relevant hereto – the Meta Pixel to disclose to Meta the unencrypted FID of the person who made the purchase and the subscription title or specific title of video material that the person purchased (as well as the URL where such video material is available for purchase)." (*See* Complaint ("Compl."), Doc. 1 at Pg. ID 17.) The Complaint then connects Defendant's disclosure practices directly to Plaintiff, demonstrating the concreteness of the injury by providing the exact date of her purchase and including an exemplar of the information communicated from Defendant to Meta. (*See id.* at Pg. IDs 4-5.) The Complaint further connects Defendant's disclosure to the class members as well by alleging that "whenever Plaintiff or any other person purchased a subscription to access prerecorded video material or prerecorded video material from Defendant on its Websites, Defendant disclosed to Meta (inter alia) the subscription or the specific title of the video material that was purchased (including the URL where such material is available for purchase),

along with the FID of the person who purchased it (which, as discussed above, uniquely identified the person)." (*See id.* at Pg. ID 18.) These allegations mirror the same nonconsensual disclosures of a person's video-watching history to third parties that every other federal Circuit that has considered the issue has found to be sufficient to establish Article III standing. For example, the Second Circuit recently concluded that Article III standing existed for a VPPA plaintiff who alleged the same conduct as Plaintiff alleges here. *See Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 542 (2d Cir. 2024). In doing so, the Second Circuit explained:

> [W]e similarly have "no trouble" holding here that Salazar's alleged harm is sufficiently concrete to withstand dismissal. Like *Bohnak*, Salazar's core allegation is that his personally identifiable information was exposed to an unauthorized third party. And Salazar doesn't just allege that his data was *exposed* to a third party; rather, he asserts that it was *disclosed* as a result of an arrangement between the NBA and Meta pursuant to which the NBA deliberately uses the Facebook Pixel. This alleged harm is closely related to the public disclosure of private facts analog.

*See id.* (internal citations omitted). The Third, Seventh, Ninth, and Eleventh Circuits have reached the same conclusion. *See In re: Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016) ("The purported injury here is clearly particularized, as each plaintiff complains about the disclosure of information relating to his or her online behavior. While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information."); *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) ("By alleging that Redbox disclosed their personal information in violation of the VPPA, Sterk and Chung have met their burden of demonstrating that they suffered an injury in fact that success in this suit would redress."); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982–84 (9th Cir. 2017) (same); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1339–41 (11th Cir. 2017) ("[W]e hold that a plaintiff such as Perry has satisfied the concreteness

requirement of Article III standing, where the plaintiff alleges a violation of the VPPA for a wrongful disclosure.").

Like in all the cases above, Plaintiff has alleged Defendant unlawfully disclosed to Meta, by installation of the Meta Pixel, her video-watching history from a twelve-month prerecorded video course. (*See* Compl., Doc. 1 at Pg. IDs 4-6.) Such an allegation involves Defendant "interjecting [Meta] into [Plaintiff's] private sphere[.]" Thus, it mirrors the invasion of privacy common law torts that this Circuit has found was sufficient under the TCPA and that other Circuits have found were sufficient under the VPPA. *See Dickson* 69 F.4th at 345 (TCPA); *Salazar*, 118 F.4th at 542 (VPPA); *In re: Nickelodeon*, 827 F.3d at 274 (VPPA); *Sterk*, 770 F.3d at 623 (VPPA); *Eichenberger*, 876 F.3d at 984 (VPPA); *Perry*, 854 F.3d at 1341 (VPPA).

Notwithstanding the overwhelming precedent in Plaintiff's favor, Defendant's Motion argues that Plaintiff lacks Article III standing because "Plaintiff's alleged injury . . . is outside of the 'context-specific extension of the substantive right to privacy' that the VPPA codifies because there are no video titles listed or referenced that could have been disclosed." (*See* Defendant's Motion to Dismiss, Doc. 10 at Pg. ID 66.) Specifically, Defendant includes a screen capture of its entire website where the prerecorded online video course that Plaintiff purchased is available to argue that Plaintiff's VPPA claim fails because "the name of a course in which she enrolled" is not "*the title of any specific video material*" sufficient to trigger VPPA liability. (*See id.* at Pg. ID 64.) Defendant's standing argument fails at the outset because it challenges the merits of Plaintiff's claim under the guise that such an argument falls under Rule 12(b)(1). Specifically, Defendant argues Plaintiff has not suffered an injury in fact because the information disclosed to Facebook (prerecorded video title, URL, FID, event codes) does not include information protected by the VPPA.

This very argument was rejected in a VPPA case that Defendant has cited, *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 283 (S.D.N.Y. 2023), where the court concluded the plaintiff had standing and explained that "whether the precise disclosure is actionable under the VPPA is a question about the merits of Martin's claim, rather than his ability to bring his case in federal court." Cengage's entire 12(b)(1) argument rests on whether its disclosure of Plaintiff's information is actionable. Therefore, this Court should find that Plaintiff has standing and move to Defendant's motion on the merits. *See e.g., Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) ("If, on the other hand, an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should '*find that jurisdiction exists* and deal with the objection as a direct attack on the merits of the plaintiff's claim.'").

Defendant's standing argument fails for additional reasons. First, Defendant argues the prerecorded online video courses it sells cannot establish liability under the VPPA because online courses, like the one Plaintiff purchased that is "not purely a video-based course," also include books, study guides, and other materials. (*See* Defendant's Motion to Dismiss, Doc. 10 at Pg. ID 63.) Stated differently, Defendant essentially argues that offering other items in addition to a video is sufficient to immunize a person from liability under the VPPA. However, Defendant's narrow interpretation directly conflicts with the plain text of the VPPA. The VPPA prohibits any disclosure that identifies a person as having "requested or obtained specific video materials or services" from a videotape service provider without regard for how much video is present. In fact, the Southern District of New York recently addressed this issue in *Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *6 (S.D.N.Y. Feb. 21, 2024), when it was tasked with determining whether "cut-scene" videos within a video game are sufficient to trigger VPPA

liability or whether inclusion of those short videos are merely incidental and insufficient to give rise to VPPA liability. The court held that "the 'cut scenes' in video games are clearly 'video content' covered by the VPPA, even if they are accompanied by the active game elements of the video games that GameStop sells." *See id.* The court concluded the plaintiff had standing, because the plaintiff alleged that GameStop "is in the business of selling video games—products that include video content that is covered by the VPPA— it can be covered by the VPPA at least to the extent of those products." *See id.* at *6.

The same is true here, a prerecorded video course that is accompanied by other materials does not erase a defendant's liability. Nowhere in Defendant's motion does it challenge that it is a "videotape service provider," which serves as a concession that Defendant is "engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials" such as the prerecorded online video courses alleged in the Complaint. *See* 18 U.S.C. § 2710(a)(4). Therefore, this Court should adopt the reasoning in *Aldana* and hold that "businesses 'that provide [VPPA-covered] video content as well as other media content' that is not covered by the VPPA 'are video service providers under the VPPA[.]'" *See id.* (internal citations omitted). [1] Because Plaintiff has adequately pled Defendant

---

[1] Whether prerecorded video material is purely a video or not is irrelevant to the assessment of whether a disclosure has occurred because courts that have examined a defendant's use of videos online limit their assessment to the element of whether a defendant is a videotape service provider. That is, courts look at how a company is alleged to display online prerecorded content in comparison to that business' operations to determine whether the defendant is engaged in the rental, sale, or delivery of audio-visual materials or whether those actions are ancillary to its business. Where the actions are ancillary, the defendant is not a videotape service provider subject to the VPPA. *See e.g., Cantu v. Sunrun Inc.*, No. 23-CV-974-JO-AHG, 2023 WL 11795670, at *3 (S.D. Cal. Nov. 22, 2023) (evaluating videos on a solar company's website in the context of whether the company is a videotape service provider); *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 994 (S.D. Cal. 2023) (evaluating videos on Coach.com, which were used for brand awareness to conclude that Tapestry is not a videotape service provider) [hereinafter cited as "*Tapestry II*"]; *Carroll v. Gen. Mills, Inc.*, No. CV 23-1746 DSF (MRWx), 2023 WL 4361093, at *3 (C.D. Cal. June 26, 2023) (evaluating whether General Mills' use of videos on its website made it a videotape service provider). Where, as here, Defendant concedes that it is a videotape service provider, it has waived any argument that the prerecorded online video courses it offers for sale are insufficient to create an injury-in-fact for Article III standing because videotape service providers are engaged in the business of rental, sale, or delivery of prerecorded audio-visual materials under the VPPA.

is a videotape service provider and the prerecorded courses are similar audio visual materials, those allegations are sufficient to establish standing.

Further, Defendant's argument that no injury-in-fact has occurred because the product is not "purely a video-based course" directly contravenes the text of the VPPA and has been rejected by several courts. Put differently, Defendant argues that because the screenshot exemplar and the URL of the course included within the Complaint do not display only a video, there can be no concrete injury. This very argument was rejected in *Cantu v. Tapestry, Inc.*, No. 22-CV-1974-BAS-DDL, 2023 WL 4440662, at *4 (S.D. Cal. July 10, 2023) [hereinafter, cited as "*Tapestry I*"], where a VPPA plaintiff used screenshots from an archived webpage as exemplars in his complaint alleging he watched a video on the Coach.com website. The defendant relied on *Eichenberger*, just as Cengage now does, to argue *inter alia* that "when one visits the web archive URL that appears in the image [p]laintiff provided in his Complaint . . . no video is displayed at all." *See id.* The court rejected the defendant's argument finding that standing existed because the plaintiff pled that he visited the website, watched one or more videos, and as a result, the defendant disclosed his identifiers to Meta. *Id.* at *4–5. The court went on to state that a plaintiff is "under no obligation to provide figures such as screenshots to bolster his pleading" and accepting the allegations as true, "it can be permissibly inferred that [p]laintiff's data was" disclosed in a similar manner as the tester "when [plaintiff] visited the website." *See id.* at *5; *see also Braun v. Philadelphia Inquirer, LLC*, No. 22-CV-4185-JMY, 2023 WL 7544160, at *3 (E.D. Pa. Nov. 13, 2023) (recognizing that "[a] developed factual record would also aid in answering any question about the status of the web addresses or URLs in the context of this litigation" before holding that "[plaintiffs] aver sufficient facts in the Amended Complaint for their VPPA claim to survive the [] motion to dismiss"). This Court should do the same, and Defendant's motion should be denied.

9

### B. Plaintiff has Sufficiently Alleged Her VPPA Claim

A "plausible claim" under the VPPA requires a plaintiff to allege that (1) the defendant is a "video tape service provider," (2) the defendant disclosed "personally identifiable information concerning any customer" to "any person," (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by the statutory exceptions. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Plaintiff has clearly and sufficiently alleged all four elements. Because Defendant only challenges the second and third elements, those elements are discussed below.

### 1. Plaintiff has Sufficiently Alleged Personally Identifiable Information

Defendant argues that Plaintiff fails to sufficiently allege PII under the VPPA because the way in which the Ninth and Third Circuit interpret PII requires a plaintiff to allege "(1) particular video materials and video services; (2) a particular person; and (3) a connection between the two." (*See* Defendant's Motion to Dismiss, Doc. 10 at Pg. ID 67-75.) Defendant's arguments are entirely without merit.

The Complaint contains numerous factual allegations plausibly demonstrating that Plaintiff's Facebook account contained her full name (among many additional personal details), that Plaintiff's FID identifies Plaintiff by name (and other personal details), and that Defendant disclosed to Meta Plaintiff's FID along with information that identified her as having requested or obtained specific prerecorded video materials or services from Defendant. Specifically, the Complaint alleges Defendant disclosed to Meta the Facebook IDs of Plaintiff and its customers and that its disclosure of those Facebook IDs was paired with the URLs that identified the specific prerecorded video products or services requested or obtained by Plaintiff and its other customers and where such products or services were obtained on Defendant's websites.[2] (Compl., Doc. 1 at

---

[2] In a footnote, Defendant asks this Court to disregard or strike well-pled allegations concerning Defendant's www.miladytraining.com website, (*see* Defendant's Motion to Dismiss, Doc. 10 at Pg. ID 60 n.1), which Plaintiff

Pg. IDs 2-4, 13, 17-18, 22.) The Complaint further alleges all Facebook IDs, pertaining to all of Meta's subscribers (including Plaintiff), are personally identifying because every Meta subscriber has an FID, every Meta subscriber's FID (including Plaintiff's FID) is indexed to that subscriber's Meta account page, and that every subscriber's (including Plaintiff's) Meta account page reveals the subscriber's first and last name, birth date, gender, and phone number or email address. (*See id.*, at Pg. IDs 3, 14-15.) The Complaint also alleges that Defendant disclosed the fact that Plaintiff and other customers purchased a "subscription to access prerecorded videos or the specific title of prerecorded videos," which, by the titles of the courses alone, identify the subject matter of the prerecorded video content hosted on the particular site. (*Id.* at Pg. ID 2-6, 13, 16-19, 21-22.) These well-pled factual allegations, which must be accepted as true at this stage of the proceedings, adequately demonstrate that Defendant disclosed "information which identifies [Plaintiff] as having requested or obtained specific video materials or services from [Defendant]" to Meta. 18 U.S.C. § 2710(a)(1); *see also Jones v. City of Cincinna*ti, 521 F.3d at 559 (courts must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."); *Jones v. Ohio Dep't of Pub. Safety*, 2024 WL 495529, at *4.

Indeed, numerous courts presiding over similar VPPA cases have concluded that a plaintiff's allegations that a defendant disclosed to Meta all of its customers' Facebook IDs, along with the URLs identifying or naming the prerecorded videos requested or obtained by each of them, adequately demonstrate actionable disclosures of "personally identifiable information" within the meaning of the VPPA. *See Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023); *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1334 (N.D. Ga. 2023)

---

alleges operates and discloses customer PII in the same manner as the www.ed2go.com website. (Compl., Doc. 1. Throughout.) The Court must accept Plaintiff's allegations as true, which commands denial of Defendant's request.

(holding that the "bundling of the [Facebook ID] from the c_user cookie with the URLs of the videos Plaintiff watched" satisfies the disclosure element); *Belozerov v. Gannett Co.*, 646 F.Supp.3d 310, 314 (D. Mass. 2022) (finding a Facebook ID meets the definition of personally identifiable information); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1021 (D. Minn. 2023) ("And most district courts that have addressed the use of Facebook Pixel specifically reached this same result in the context of Rule 12(b)(6) motions"); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1342 (N.D. Ga. 2022) ("[Plaintiff] adequately alleged that [defendant] disclosed her Facebook ID and email address in connection with her video viewing information to Facebook and that the disclosure of such information constituted a disclosure of PII."); *Ellis v. Cartoon Network, Inc.*, No. 14 Civ. 484 (TWT), 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014) (same), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir. 2015).

In nonetheless arguing that Plaintiff's allegations fail to plausibly demonstrate disclosures of "personally identifiable information" to Meta, Defendant invites this Court to adopt the ordinary person test from the Third and Ninth Circuits. (Defendant's Motion to Dismiss, Doc. 10 at Pg. ID 67.) This Court should decline this invitation for several reasons, including because, as Senior District Judge Carr from the Northern District of Ohio recently explained, in the absence of authority from the Sixth Circuit, a court is under no obligation "to apply an analysis that narrows the definition" of a statutory provision "beyond its plain meaning." *See Collins*, 720 F. Supp. 3d at 554. The plain meaning of "personally identifiable information" is, as the First Circuit explained, purposely broad because it uses the word "includes," which "normally implies that [a narrowed] definition falls short of capturing the whole meaning" of the word. *See Yershov*, 820 F.3d at 486.[3]

---

[3] The Sixth Circuit has long recognized that Congress's use of certain words while omitting others reflects its intent. *See Musselman Hub-Brake Co. v. Comm'r of Internal Revenue*, 139 F.2d 65, 68 (6th Cir. 1943).

Second, this Court should further reject the ordinary person test because it is not the law of this Circuit, and this Court need not apply such a standard because it contravenes the plain language and statutory history of the VPPA.  *See e.g.*, *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1226 (C.D. Cal. 2017) ("The Court finds *Yershov* to be a more persuasive interpretation of the VPPA than *In re Nickelodeon* . . . [because] *Yershov* focused foremost on the text of the statute, while In re Nickelodeon turned quickly to "the more controversial realm of legislative history."); *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015); *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016) ("Nevertheless, the language reasonably conveys the point that PII is not limited to information that explicitly names a person. Had Congress intended such a narrow and simple construction, it would have had no reason to fashion the more abstract formulation contained in the statute.").

Even should this Court apply the narrower standard, Plaintiff's allegations are more than sufficient.  In its argument to the contrary, Defendant principally relies on *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023), to argue that disclosure of a person's enrollment in a prerecorded video course is the same as disclosure of a general webpage title.  In *Martin*, the court dismissed the VPPA claim explaining that "even for webpages including a video, sending the URL does not identify a person as having requested or obtained the video on that page since the person may instead have merely reviewed an article on the page or opened the page and done nothing more."  *See id.* at 285.  *Martin* is patently distinguishable because here, Plaintiff alleges that more than just a generic URL is disclosed.  Plaintiff specifically alleges that "when Plaintiff purchased the "Medical Billing and Coding" online course, the course type, the specific title and URL of the prerecorded video material, and her request to "ENROLL NOW" to complete her

13

purchase was transmitted to Meta alongside Plaintiff's FID." These allegations satisfy each point raised in *Martin*. Then, to bolster her allegations, Plaintiff includes a screenshot showing Defendant's website executing a GET request to Facebook's tracking URL "https://www.facebook.com/tr" when it sends various query string parameters, event codes, and cookie values, such as: (1) the URL of the website, (2) the title of the prerecorded video material, and (3) the action taken on the site, which in the exemplar was "add to cart," "subscription," and "button clicked." The screenshot disclosure is similar to the test disclosure used in *Tapestry I* to illustrate what appeared on the archived website and constituted the disclosure that would have occurred when the named plaintiff visited the Coach.com website. *See e.g., Tapestry I*, 2023 WL 4440662, at *4 (finding that "nothing in the screenshot "fatally undermines" what Plaintiff has pleaded here."). Accordingly, *Martin* is distinguishable, and the holding in *Tapestry I* should be applied.

Next, Defendant relies on *Robinson v. Disney Online*, 152 F. Supp. 3d 176 (S.D.N.Y. 2015) and *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 2758598, at *1 (N.D. Cal. June 17, 2014) [hereinafter cited as, "*Hulu II*"] to argue Plaintiff has not alleged her information was disclosed. These cases are glaringly distinguishable. For example, *Robinson* involved an anonymous Roku device identifier that was in no way connected to an actual person, whereas here Plaintiff specifically alleged her PII (Facebook ID, unique identifiers, and her purchase of a subscription to access prerecorded video material to Defendant's website) was disclosed. In fact, *Robinson* supports denying Defendant's motion, as the court explained that "[a] Facebook ID, as the *Hulu* court found, is thus equivalent to a name—it stands in for a specific person, unlike a device identifier." *Hulu II,* which Defendant conveniently cites rather than the decision issued at

14

the pleading stage,[4] is also distinguishable because it was decided at the motion for class certification stage. As explained above, the Complaint specifically alleges that Plaintiff's FID was actively disclosed when she accessed Defendant's website, thus Defendant's argument fails. *See Feldman*, 659 F. Supp. 3d at 1021.

Lastly, and even more deceitfully, Defendant relies on the summary judgment order from the *Hulu* litigation styled as *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1091 (N.D. Cal. 2015) [hereinafter, cited as "*Hulu III*"], to argue that "Plaintiff has failed to adequately allege that the information purportedly transmitted by Cengage linked or connected Plaintiff with any specific video materials" because "Cengage's alleged transmittal of information to Meta did not include a connection of Plaintiff's identity with the request for specific video materials." (*See* Defendant's Motion to Dismiss, Doc. 10 at Pg. IDs 72-73.) Almost every court to address this issue at the pleading stage has found allegations like those found in Plaintiff's Complaint, to be sufficient. Perhaps this is why Defendant has offered no factual or procedurally applicable case to the contrary. *See e.g., Guereca v. Motorsport.tv Digital, LLC*, No. 1:24-CV-24066, ECF No. 30 (S.D. Fla. Feb. 19, 2025); *Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *5 (N.D. Cal. July 20, 2023) (link sufficiently alleged); *Feldman*, 659 F. Supp. 3d at 1021 (collecting cases for same). Because the allegations in the Complaint sufficiently connect Plaintiff to the prerecorded video material she requested or obtained, Defendant's motion must be denied.

### 2. Plaintiff has Sufficiently Alleged Defendant's Knowledge

Defendant lastly argues dismissal of the Complaint is warranted because "Plaintiff fails to adequately allege the mens rea requirement—that Cengage knowingly disclosed her identity, the identity of specific video materials, and the fact of her having requested, accessed, or watched

---

[4] *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) (denying defendant's motion to dismiss) [hereinafter cited as "*Hulu I*"].

those specific video materials." (*See* Defendant's Motion to Dismiss, Doc. 10 at Pg. ID 73.) To support this position, Defendant argues (1) "nowhere in the Complaint does Plaintiff allege that Cengage ever possessed her FID," (2) "Plaintiff does not allege that Cengage knew that Meta would take the additional step of identifying her with the FID and linking her to the specific video materials she requested, obtained, or viewed from Cengage—in other words, knowledge that Meta would 'forg[e] that connection,'" and (3) "Plaintiff fails to allege that, when she registered for the Medical Coding and Billing course material, Cengage had any knowledge of whether she even had a Facebook profile and FID and, if she did, whether it knew that such a profile actually contained personally identifying information (e.g., her actual name, place of residence, birthdate, etc.)." (*See id.* at Pg. ID 74-75.)

These arguments are baseless because the Complaint alleges throughout that Defendant knowingly disclosed its consumers' personally identifiable information to Meta by installing the Meta Pixel on its website in order to improve its marketing and advertising abilities. For example, the Complaint states:

> Defendant **knowingly** disclosed Plaintiff's and Class members' Private Viewing Information to Meta via the Meta Pixel technology because **Defendant intentionally installed and programmed the Meta Pixel code on its Websites, knowing that such code would transmit the subscription or prerecorded video material purchased by its consumers and the purchasers' unique identifiers** (including FIDs).

(*See id.* at Pg. ID 22 (emphasis added).) Further, the Complaint contains the following allegations that clearly establish Defendant's made its disclosures knowingly:

- "Plaintiff brings this action to redress Defendant Cengage Learning, Inc.'s ("Cengage") practices of selling, renting, transmitting, and/or otherwise disclosing, to various third parties, records containing the personal information of each of its customers, along with detailed information revealing the subscription to prerecorded video content or titles and subject matter of prerecorded video and other audiovisual materials requested or obtained by each customer . . .." (Compl., Doc. 1 at Pg. ID 2.)

16

- "[T]he Meta Pixel technology that Defendant **intentionally installed** on its Websites transmits (1) the unencrypted FID for each purchaser and subscriber; (2) detailed information revealing the titles and subject matter of the prerecorded videos requested or obtained by each of its purchasers; (3) the fact that a consumer purchased a subscription to video materials or services; and (4) the URL where such videos or subscriptions are available for purchase. . . ." (*Id.* at Pg. ID 13 (emphasis added).)

- "Defendant **intentionally programmed its Websites (by following step-by-step instructions from Meta's website) to include the Meta Pixel code**. . . ." (*Id.* at Pg. ID 17 (emphasis added).)

- "With only a person's FID and the subscription purchase or the title of the prerecorded video material (or URL where such material is available for purchase) that the person purchased from Defendant on both of its Websites —**all of which Defendant knowingly and systematically provides to Meta**. . . ." (*Id.* at Pg. ID 18 (emphasis added).)

- "At all relevant times, Defendant **knew the Meta Pixel was disclosing its customers' Private Viewing Information to Meta**." (*Id.* (emphasis added).)

- "Defendant could easily have programmed its Websites so that none of its customers' Private Viewing Information is disclosed to Meta, **Defendant instead chose to program its Websites so that all of its customers' Private Viewing Information is disclosed to Meta**" (*Id.* (emphasis added).)

Courts across the country have routinely held that allegations that a defendant knowingly installs the Meta Pixel on its website, just as Plaintiff's Complaint alleges, are sufficient to plausibly allege the defendant. For example, in *Czarnionka v. Epoch Times Association, Inc.*, the defendant argued that the plaintiff had not plausibly alleged that "Epoch even knew the Facebook ID existed much less that Epoch considered the Facebook ID to be PII or knew it was transmitted[.]". No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022). The court soundly rejected this argument based on the complaint's allegations that the defendant programmed the Meta Pixel into its website code and knew that it would transmit video titles and Facebook IDs to Meta. *See id.* ("The Complaint plainly alleges that Defendant's "disclosures were made knowingly, as [Defendant] programmed the Facebook Pixel into its website code . . .

Knowledge of what Facebook might do with the disclosed information to yield PII is therefore unnecessary.") Other courts considering the issue have consistently reached the same conclusion. *See, e.g.*, *Lebakken*, 640 F. Supp. 3d at 1342-43 (distinguishing *In re Hulu Priv. Litig.* as procedurally different); *Frawley v. Nexstar Media Grp. Inc.*, No. 3:23-CV-2197-L, 2024 WL 3798073, at *3 (N.D. Tex. July 22, 2024) (finding allegations "that 'Defendant utilizes Facebook's Business Tools and intentionally installed the Pixel and Conversions API on its website to track and transmit their Personal Viewing Information to third parties' and '[a]t all relevant times, Defendant knew that the Facebook pixel disclosed Personal Viewing Information to Facebook" . . . are "sufficient to state a claim"), *report and recommendation adopted*, No. 3:23-CV-2197-L, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024); *Li v. Georges Media Grp. LLC*, No. CV 23-1117, 2023 WL 7280519, at *4 (E.D. La. Nov. 3, 2023) (collecting cases of the same); *Feldman*, 659 F. Supp. 3d at 1022 ("It follows that a VPPA plaintiff need not allege—to meet the VPPA's "knowingly" element—that the video tape service provider knew that the person to whom personally identifiable information was disclosed would "actually connect" the disclosed information."); *Harris v. Pub. Broad. Serv.*, 662 F.Supp.3d 1327, 1336 (N.D. Ga. 2023*)* (finding the "knowingly" element satisfied and rejecting a defendant's argument that precise knowledge must be pled); *Belozerov v. Gannett Co.*, 646 F.Supp.3d 310, 314 (D. Mass. 2022) (same); *Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 43 (D. Mass. 2023) ("Contrary to Defendants' assertions, it does not matter, at least at this stage, whether they knew that each individual user had a Facebook account, nor whether Facebook, in fact, linked such information to particular accounts."), *appeal dismissed sub nom. Adams v. Am.'s Test Kitchen, Inc.*, No. 23-1592, 2024 WL 3515257 (1st Cir. July 17, 2024).

Here, the Complaint sufficiently alleges that Defendant knowingly disclosed its customers' Facebook IDs and URLs identifying and containing the names of the videos the customers requested or obtained to Meta, as outlined above.  (Compl., Doc. 1 at Pg. IDs 3, 17-19, 21-22.) Any one of these well-pled allegations, standing alone, would be sufficient to allege Defendant's knowing disclosure of personally identifiable information.  *See Czarnionka*, 2022 WL 17069810, at *3; *Frawley*, 2024 WL 3798073 at *9; *Feldman*, 659 F. Supp. 3d at 1022; *Harris*, 662 F. Supp. 3d at 1336.   Taken together, these direct allegations paint a comprehensive picture of how Defendant intentionally and knowingly utilized the Meta Pixel to disclose its customers' personally identifiable information to Meta, which is sufficient to establish the knowing element of Plaintiff's VPPA claim.  *See e.g., Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 457 (6th Cir. 2011) (finding allegations sufficient where the complaint offers direct allegations of the claim supported by instances to support those allegations).

Interestingly, Defendant again relies on cases that are obviously distinguishable because they are from the summary judgment stage and only one case involved a VPPA claim (*Hulu III* and *Yoder v. Ingersoll-Rand Co.*, 31 F. Supp. 2d 565 (N.D. Ohio 1997)).  Because the Complaint plausibly alleges scienter, as explained above, Defendant's argument to the contrary must be rejected.

## IV.    CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss in its entirety because Plaintiff has sufficiently alleged standing and each element of her and the Putative class members' VPPA claims.

Respectfully submitted,

Dated: February 21, 2025

**O'CONNOR, HASELEY & WILHELM LLC**

Daniel J. O'Connor Jr.
Ohio Bar No. 91397
O'Connor, Haseley & Wilhelm LLC
470 W. Broad St., Suite 15
Columbus, OH 43215
Telephone: (614) 572-6762
Facsimile: (614) 937-8872
doconnor@goconnorlaw.com

and

**HEDIN LLP**

Elliot O. Jackson (pro hac vice)
Florida Bar No. 1034536
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
ejackson@hedinllp.com

*Counsel for Plaintiff and Putative Class*