UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
CINCINNATI DIVISION

| | |
|---|---|
| ALEXANDRIA HAINES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CENGAGE LEARNING, INC.,<br><br>Defendant. | Civil Action No. 1:24-cv-00710-MWM<br><br>Hon. Matthew W. McFarland<br><br>Magistrate Judge Karen L. Litkovitz<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND ORAL ARGUMENT REQUESTED**

Defendant, Cengage Learning, Inc., by and through its undersigned counsel, submits their Reply to Plaintiff Alexandria Haines' Opposition to Defendant's Motion to Dismiss, and respectfully requests an oral argument.[1]

**I.  Introduction**

Plaintiff Alexandria Haines's ("Plaintiff") opposition (Doc. # 13) to Defendant Cengage Learning Inc.'s ("Cengage") motion to dismiss (Doc. # 10) both misconstrues Cengage's standing argument and neglects to meaningfully address the fact that Plaintiff's vague allegations fail to invoke the transmission of any "video-viewing history." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017). Therefore, on either basis, the Court should grant Cengage's motion to dismiss.

---

[1] Pursuant to United States Magistrate Judge The Honorable Karen L. Litkovitz's November 20, 2018 Standing Order on oral argument, Cengage Learning, Inc. respectfully requests oral argument to be conducted, in part, by Cengage's counsel, Kevin Cole, a 2022 law school graduate.  A Notice to this effect is filed contemporaneously with this brief.

1

## II. Plaintiff Lacks Article III Standing

As described in depth in Cengage's motion to dismiss, "the VPPA creates a right to the privacy of one's video-watching behavior . . . ." *Austin-Spearman v. AMC Network Ent., LLC*, 98 F. Supp. 3d 662, 666 (S.D.N.Y. 2015). Motion to Dismiss, Doc. # 10 at PageID # 63. But no such "video-watching" happens, or is disclosed, on the webpage at issue in Plaintiff's complaint. In an attempt to sidestep this reality, Plaintiff argues that the disclosure of her simple enrollment in "a twelve-month prerecorded" educational course suffices as an injury-in-fact under the VPPA:

> Plaintiff specifically alleges that 'when Plaintiff purchased the "Medical Billing and Coding" online course, the course type, the specific title and URL of the prerecorded video material, and her request to "ENROLL NOW" to complete her purchase was transmitted to Meta alongside Plaintiff's [Facebook Identification Number].

Memo in Opposition, Doc. # 13 at PageID # 97 (quoting Class Action Complaint, Doc. # 1 ("Complaint" or "Compl.")). A cursory visit to the exact webpage incorporated by reference in Plaintiff's complaint demonstrates that there *is no prerecorded video material* on the complained-of webpage, nor reference to any such specific material. Instead, the URL navigates to a landing page on which a visitor can enroll in an online medical coding continuing education/certification course – a course that includes textbooks, study guides, and access to a medical coding application. The VPPA, however, does not protect an individual's right to privacy in their enrollment in an educational course.

Plaintiff attempts to conceal the fact that her supposed injury falls outside the scope of those protected by the VPPA by misconstruing Cengage's standing argument in two ways. First, Plaintiff creatively recasts Cengage's standing argument as asserting that "offering other items in addition to a video is sufficient to immunize a person from liability under the VPPA." Memo in Opposition, Doc. # 13 at PageID # 91. That was not—and is not—Cengage's argument, as

2

Cengage does not dispute in this motion whether it is a video tape service provider. Rather, Cengage's argument is that, on the face of Plaintiff's Class Action Complaint, the complained-of disclosure (constituting a supposed injury-in-fact under the VPPA) is Plaintiff's enrollment in an online educational course. *See generally* Compl. The webpage Plaintiff cites demonstrates this reality, as it merely contains a course description and outline, course requirements, the biographies of the instructors, and a link to enroll. The Complaint, presumably by design, does not contain allegations of any of the actual video-watching material allegedly disclosed by the Meta Pixel. *See id*. Necessarily, then, it does not allege the disclosure of "video watching history" or "video watching behavior." Indeed, as Plaintiffs themselves acknowledge, Cengage *does not presently* dispute that it is a video tape service provider as that term is understood under the VPPA. Therefore, Plaintiff's argument on this point should be ignored.[2]

Second, and relatedly, Plaintiff claims: "Defendant argues that because the screenshot exemplar and the URL of the course included within the Complaint **do not display only a video**, there can be no concrete injury." Memo in Opposition, Doc. # 13 at PageID # 93. This is another mischaracterization of Cengage's standing argument. Again, Cengage's position is not that the URL does not "display *only* a video." Cengage's position is that there is *no video material* on the relevant webpage *at all*. Indeed, Plaintiff does not allege she even watched a specific video on Cengage's website—in marked contrast to the plaintiffs in the cases she cites. One such case, *Cantu v. Tapestry*, involves a plaintiff that alleged the defendant "disclos[ed], without consent, the

---

[2] While Plaintiff's citation to *Aldana v. GameStop, Inc.*, is largely irrelevant given Cengage's position on whether it is a video tape service provider under the VPPA, Cengage notes that the plaintiffs there at least alleged that the defendant's disclosures permitted Meta to ascertain "what video games a specific individual has purchased"—including the two specific video games at issue. No. 22-cv-7063-LTS, 2024 WL 708589, at *2 (S.D.N.Y. Feb. 21, 2024). Further, the court there effectively equated video games with "video content" because, according to the *Aldana* complaint, they necessarily contain video clips that the player watches—further distinguishing the case from the one at hand. *Id.* at *6.

identifies of customers and *the titles* of videos *they view* on Coach's website to Facebook." No. 22-cv-1974-BAS-DDL, 2023 WL 4440662, at *1 (S.D. Cal. July 10, 2023) (emphasis added); *see also id.* at *5 ("And to be sure, Plaintiff pleads that he watched the video around October 21, 2022); *Braud v. Phil. Inquirer, LLC*, 2023 WL 7544160, at *1 (E.D. Pa. Nov. 13, 2023) (concluding that plaintiffs' complaint survived defendant's standing challenge where plaintiffs alleged, *inter alia*, that defendant "disclos[ed] the *titles to specific videos that Plaintiffs requested or viewed*.") (emphasis added). *That* is the type of personally identifiable information ("PII") the VPPA protects from unauthorized disclosure—the titles of specific videos viewed, accessed, or requested.[3] Plaintiff has not made such allegations here (nor can she).

Finally, Plaintiff's passing invocation of the pre-*Spokeo* case *Gentek Building Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007), does not necessitate the conclusion that "this Court should find that Plaintiff has standing and move to Defendant's motion on the merits." Memo in Opposition, Doc. # 13 at PageID # 91. As has been explained by more on-point Sixth Circuit precedent, in the time after the Supreme Court's recent elucidation of the Article III analysis,[4] the inquiry here is whether "the federal questions raised by this complaint legitimately create federal court jurisdiction because they are not so frivolous as to be a contrived effort to create such jurisdiction[.]" *Benalcazar v. Genoa Township*, 1 F.4th 421, 424 (6th Cir. 2021); *see also Gerber v. Herskovitz*, 14 F.4th 500, 513 (6th Cir. 2021) (Clay, J., concurring) (recognizing same). This makes sense, as the alleged injury-in-fact must have resulted from "an

---

[3] Nor does Plaintiff's re-imagining of what the complaint alleges change the analysis. In her opposition, Plaintiff states that she "has alleged Defendant unlawfully disclosed to Meta, by installation of the Meta Pixel, her video-watching history from a twelve-month prerecorded video course." Memo in Opposition, Doc. # 13 at PageID # 90 (citing Doc. # 1). But a proper reading of her complaint reveals that, at most, she alleges the disclosure of her enrolment in an educational course.

[4] *E.g.*, *Spokeo, Inc. v. Robins*, 578 U.S. 130 (2016); *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).

invasion of a legally protected interest." *Gerber*, 14 F.4th at 505 (quoting *Spokeo*, 578 U.S. at 339). Here, Cengage's standing argument is separate and distinct from its merits argument: Plaintiff's complaint merely alleges disclosure with respect to her enrollment in an online educational course, which is not the "invasion of a legally protected interest" under the VPPA. The Complaint should therefore be dismissed for Plaintiff's lack of standing.

### III. Plaintiff Fails to State a Claim Under the VPPA

Separately, and in the alternative, Plaintiff fails to state a claim under the VPPA because she does not plausibly allege that Cengage "knowingly" disclosed her PII. Her arguments to the contrary are unpersuasive.

#### A. Plaintiff Does Not Plausibly Allege a Knowing Disclosure of Her Personally Identifiable Information

The Sixth Circuit has never determined the definition of "personally identifiable information" in the context of the VPPA. Regardless of the definition this Court were to apply, Plaintiff's Complaint should be dismissed. In her opposition, Plaintiff cites to a number of paragraphs of the Complaint in an effort to demonstrate the sufficiency of her pleadings on "personally identifiable information" under the VPPA. But Plaintiff's attempt is ultimately unavailing, because she fails to allege (1) the existence of any *video material* on the website in question; (2) the disclosure of her having watched a specific *video*; and (3) whether she even watched a *video* on Cengage's website. This is fatal to her VPPA claim—which, of course, affords only *video* privacy protections.

Plaintiff asks that the Court apply the interpretation of PII established by the First Circuit in *Yershov v. Gannett Sattelite Information Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016). There, the court held that "the language reasonably conveys the point that PII ***is not limited to information that explicitly names a person***." *Id.* (emphasis added). Cengage, on the other hand, suggests

5

application of the definition used on the opposite side of the circuit split—the "ordinary person"[5] standard adopted by the Third and Ninth Circuits. Motion to Dismiss, Doc. # 10 at PageID # 67-68. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 290 (3d Cir. 2016); *Eichenberger*, 876 F.3d at 985. Under this definition, there are three elements to PII: "the consumer's identity; the video material's identity; and the connection between them." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). The Third and Ninth Circuits interpret the statute with the most fidelity to its purpose, words, and legislative history. As the Ninth Circuit has observed:

> The "ordinary person" test better informs video service providers of their obligations under the VPPA. The VPPA protects consumer privacy by directing video service providers not to do certain things with consumer information. To that end, 18 U.S.C. § 2710(b)(1) focuses on what information a video service provider "knowingly discloses." In other words, the statute views disclosure from the perspective of the disclosing party. It looks to what information a video service provider discloses, not to what the recipient of that information decides to do with it. As a result, "personally identifiable information" must have the same meaning without regard to its recipient's capabilities. Holding otherwise would make the lawfulness of a disclosure depend on circumstances outside of a video service provider's control. The Third Circuit's "ordinary person" test, by contrast, provides video service providers with enough guidance to comply with the VPPA's requirements.

*Eichenberger*, 876 F.3d at 985 (internal quotation marks and citations omitted).

This Court should adopt the "ordinary person" definition for PII recognized by other Circuits and district courts throughout the country. *See, e.g.*, *In re Nickelodeon*, 827 F.3d at 267 ("In our view, personally identifiable information under the Video Privacy Protection Act means the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior."); *Eichenberger*, 876 F.3d at 985 ("The 'ordinary person' test better informs video service providers of their obligations under the VPPA."); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 159 (S.D.N.Y. 2023) (recognizing that "[t]he

---

[5] Some courts call this the "'connection' requirement." *Feldman v. Star Tribune Media Co.*, 659 F. Supp. 3d 1006, 1021 (D. Minn. 2023).

Ninth Circuit has adopted the Third Circuit's approach, as have courts in this District") (internal citations omitted); *Feldman*, 659 F. Supp. 3d at 1021 (recognizing that the definition of PII under the VPPA includes a "'connection'" requirement—i.e., that disclosed information connect the consumer to the video material the consumer requested or obtained"); *United States v. Shultz*, No. 16-10107-01-EFM, 2018 WL 534333, at *3 (D. Kan. Jan. 24, 2018) (observing that "[a]lthough the Tenth Circuit has not addressed the definition of PII for purposes of the VPPA, courts that have addressed the meaning of PII have uniformly applied an interpretation linked to the disclosure of *video* materials or *video* services obtained by a specific individual") (emphasis in original). Plaintiff's citation to *Collins v. Toledo Blade* in isolation, (Doc. # 13 at PageID # 96), does not undermine the applicability of the "ordinary person" definition, because although the VPPA uses the word "includes" to partially define PII, that term is immediately modified by the clause "as having requested or obtained specific video materials or services." 18 U.S.C. § 2710(a)(3). Further, the Court in *Collins* was discussing the definition of a video tape service provider under the VPPA—not the applicable definition of PII. 720 F. Supp. 3d 543, 554 (N.D. Ohio 2024).

Regardless, the Court's selection of the applicable definition here is ultimately immaterial, because Plaintiff neither *alleges the identity of the specific video materials allegedly disclosed by Cengage*—nor that she watched any specific videos on Cengage's website (or elsewhere). Confoundingly, the pleadings are completely devoid of a *single video title*. Regardless of the standard in *Yershov* or the standard adopted in the Third and Ninth Circuits, this is fatal to Plaintiff's VPPA claim, and her Complaint should therefore be dismissed. *See Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023) (observing that "the VPPA requires that the information disclosed identify a person 'as having requested or obtained specific video materials or services from a video tape service provider'") (quoting 18 U.S.C. § 2710(a)(3)); *Feldman*, 659 F. Supp. 3d

1006, 1021 (D. Minn. 2023) (finding the plaintiff to have sufficiently pleaded PII where he alleged, *inter alia*, that he "regularly watched" videos on the website 'using the same device and/or browsers in which he is logged into his Facebook account'").

### B. Plaintiff Does Not Plausibly Allege a Knowing Disclosure

Finally, Plaintiff argues that her complaint plausibly alleges Cengage's knowing disclosure of her PII via the Meta Pixel. Motion to Dismiss, Doc. # 13 at PageID # 99-103. But Plaintiff does not reckon with the fact that, if she does not allege she watched specific video materials on Cengage's website, then it is impossible for Cengage to have knowingly disclosed that information to Meta. Simply put, Plaintiff's omission regarding PII is further fatal to her claim because a party cannot disclose information that it does not itself have. *See Eichenberger*, 876 F.3d at 986 (rejecting VPPA claim where the defendant "never disclosed and apparently never even possessed" the information that would allow a third party to identify an individual); *Yoder v. Ingersoll-Rand Co.*, 31 F. Supp. 2d 565, 571 (N.D. Ohio 1997) (granting motion for summary judgment against invasion of privacy claim where defendant did not know it had received a confidential medical record, and noting "[i]t is a logical impossibility for a party intentionally to disclose information that it does not know it has.").

### IV. Conclusion

Cengage respectfully requests that the Court grant its motion to dismiss and dismiss Plaintiff's complaint in its entirety.

Dated: March 7, 2025	Respectfully submitted,

*/s/ Jennifer Snyder Heis*
Jennifer Snyder Heis (0076181) (Trial Attorney)
Kevin M. Bandy (0095721)
UB GREENFELDER LLP
312 Walnut Street, Suite 1400
Cincinnati, OH 45202
Telephone: (513) 698-5058
Fax: (513) 698-5001
jheis@ubglaw.com
kbandy@ubglaw.com

Matthew C. Wolfe (admitted *pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7700
Fax: (312) 558-1195
mwolfe@shb.com

Jenn O. Hatcher (admitted *pro hac vice*)
Kevin M. Cole (admitted *pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547
jhatcher@shb.com
kcole@shb.com

***Counsel for Defendant,***
***Cengage Learning, Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2025, I electronically filed the foregoing **Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss and Oral Argument Requested** with the Clerk of the Court using the CM/ECF System.

*/s/ Jennifer Snyder Heis*
Counsel for Defendant Cengage Learning, Inc.