## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ALEXANDRIA HAINES, individually and
on behalf of all other similarly situated,
     Plaintiff,

vs.

CENGAGE LEARNING, INC.,
     Defendant.

Case No. 1:24-cv-710
McFarland, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

     Plaintiff Alexandria Haines initiated this consumer class action against defendant

Cengage Learning, Inc. under the Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710 et

seq.  This matter is before the Court on defendant's motion to dismiss (Doc. 10), plaintiff's

memorandum in opposition (Doc. 13), and defendant's reply (Doc. 14).  Defendant moves

pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  On April 17, 2025, the Court

held oral argument on defendant's motion.  This matter is ripe for resolution.

## I.     Background[1]

     Defendant is an educational technology company with a principal place of business in

Mason, Ohio.  Defendant operates various websites for its different brands, including

www.ed2go.com and www.miladytraining.com,[2] where it sells subscriptions to as well as

individually priced prerecorded video content on different topics.

---

[1] The following is derived from plaintiff's complaint (Doc. 1).

[2] Defendant argues in a brief footnote, without supporting authority or argument, that any claims related to
miladytraining.com should be dismissed because plaintiff's allegations pertain only to www.ed2go.com.  (Doc. 10 at
PAGEID 60 n.1).  The Court declines to consider this argument.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96
(6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d
284, 293-94 (1st Cir. 1995)) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at
developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the
most skeletal way, leaving the court to . . . put flesh on its bones.").

On these and other of defendant's brands' websites, defendant intentionally installed a programming code from Meta Platforms, Inc. (Meta, f/k/a Facebook[3]) called the Meta Pixel. If the Meta Pixel is installed on a website, it collects the website's customer's Facebook ID (FID),[4] a unique number sequence associated with a unique Meta profile, and the purchases associated with that FID.[5] Meta profiles contain a person's name and other personally identifying information. Every transmission of information from a website to Meta via the Pixel is accompanied by the website visitor's FID. Companies using the Meta Pixel can use the information to build detailed customer profiles that allow for targeted advertising.[6]

To install the Meta Pixel, a website operator must agree to Meta's Business Tools Terms. These terms state the Meta Pixel may be used to transmit "Contact Information[,]" defined as "information that personally identifies individuals, such as names, email addresses, and phone numbers. . . ." (*Id.* at PAGEID 15, ¶ 50). The Meta Pixel also may be used to transmit "Event Data[,]" defined to include "visits to [a website operator's] sites . . . and purchases of [a website operator's] products." (*Id.* at ¶ 52). Defendant configured the Meta Pixel to transmit customers' FIDs, the URLs triggering transmission, and Event Data to Meta.

Plaintiff is a citizen and resident of the state of Washington. Plaintiff is and, at all times relevant hereto, was a Meta user.[7] On March 9, 2023, plaintiff purchased prerecorded video

---

[3] "In 2021, Facebook rebranded as Meta Platforms, Inc. *See* https://about.fb.com/news/2021/10/facebook-company-is-now-meta/ (Mar. 12, 2024) [https://perma.cc/2F24-7C88]." *Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 546 (N.D. Ohio 2024).

[4] During oral argument, the parties clarified that when an individual logs into his or her Meta account, a cookie (text file) is enabled on the user's web browser and is used by Metal Pixel to collect information.

[5] To identify a specific Meta user using an FID, one simply logs into Meta and enters www.facebook.com/[FID], which accesses a Meta user's profile.

[6] The complaint alleges that online advertising is a 26 billion dollar industry in the United States.

[7] To obtain a Meta account, a user must provide at least a first and last name, birth date, gender, and phone number or email address.

2

material from www.ed2go.com—specifically, a "Medical Billing and Coding" online course. To do so, plaintiff requested the material; provided her name, email address, and home address; and paid for the material. Defendant delivered the material.

Because plaintiff was a Meta user at the time of this transaction, defendant (through www.ed2go.com), transmitted from defendant's website to Meta plaintiff's unencrypted FID and other information, including the title and subject matter of prerecorded video materials plaintiff requested or obtained, the fact that she subscribed to video materials or services, and the URL where such video materials or services are available for purchase. This is demonstrated by the source code example in plaintiff's complaint, copied below:

| | |
|---|---|
| Request URL: | https://www.facebook.com/privacy_sandbox/pixel/register/trigger/?id=1437036116561317&ev=SubscribedButtonClick&dl=https%3A%2F%2Fwww.ed2go.com%2Fcourses%2Fhealth-and-fitness%2Fmedical%2Fctp%2Fmedical-billing-coding-voucher-included&rl=https%3A%2F%2Fwww.ed2go.com%2Fsearch%3Fterm%3Dmedical%2Bcoding%26courseTypes%3Dadvanced-career-training&if=false&ts=1729792198301&cd[buttonFeatures]=%7B%22classList%22%3A%22font-weight-bold%20px-5%20text-uppercase%20btn%20btn-success%22%2C%22destination%22%3A%22https%3A%2F%2Fwww.ed2go.com%2Fenrollment%2Faddtocart.aspx%3Fitem%3DGES1014!pierce-wa%22%2C%22id%22%3A%22checked-enrollment-btn%22%2C%22imageUrl%22%3A%22%22%2C%22innerText%22%3A%22ENROLL%20NOW%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22a%22%2C%22type%22%3Anull%2C%22name%22%3A%22%22%7D&cd[buttonText]=ENROLL%20NOW&cd[formFeatures]=%5B%5D&cd[pageFeatures]=%7B%22title%22%3A%22Medical%20Billing%20and%20Coding%20(Voucher%20Included)%22%7D&cd[parameters]=%5B%5D&sw=3008&sh=1692&v=2.9.174&r=stable&a=tmgoogletagmanager&ec=2&o=4126&fbp=fb.1.1729722869661.37608366883583979&cs_est=true&ler=empty&cdl=API_unavailable&it=1729792195650&coo=false&es=automatic&tm=3&rqm=FGET |
| Request Method: | GET |
| Status Code: | 🟢 200 OK |
| Remote Address: | 31.13.67.35:443 |
| Referrer Policy: | strict-origin-when-cross-origin |

(Doc. 1 at PAGEID 5, ¶ 13 (plaintiff highlights, in particular, the notations "SubscribedButtonClick[,]" "medical-billing-coding-voucher-included[,]" "courseTypes%3Dadvanced-career-training[,]" "success[,]" "destination[,]" "addtocart[,]" and "ENROLL%20NOW").  Defendant did not notify plaintiff in writing or otherwise regarding any general practice of sharing such information with third parties or that it was doing so in her case. Plaintiff did not consent or agree to, authorize, or otherwise permit such disclosure, and defendant did not provide plaintiff an opportunity to opt-out of such disclosures.

In summary and against the foregoing backdrop, plaintiff alleges "[b]y intentionally disclosing to Meta Plaintiff's and its other customers' FIDs together with the subscription purchase or the specific video material that they each purchased, without any of their consent to these practices, Defendant knowingly violated the VPPA on an enormous scale." (*Id.* at PAGEID 19, ¶ 70).  As a result, plaintiff "seeks to represent 'all persons in the United States who, during the two years preceding the filing of this action, purchased prerecorded video material or a subscription to access prerecorded video material or services from Defendant's Websites while maintaining an account with [Meta].'" (*Id.* at PAGEID 19, ¶ 71).

## II.    Legal standard

### A.  12(b)(1)

The question of subject matter jurisdiction is "a threshold determination." *Miller v. Collins*, No. 23-3191, 2023 WL 7303305, at *2 (6th Cir. Nov. 6, 2023) (quoting *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007)).  Federal Rule of Civil Procedure 12(b)(1) governs dismissal for lack of subject-matter jurisdiction.  Rule 12(b)(1) motions involve

either a facial attack or factual attack. *Global Technology, Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015). A facial attack "questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When reviewing a facial attack, a court must apply the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *Global Technology*, 807 F.3d at 810.

"When a Rule 12(b)(1) motion attacks a complaint's factual predicate, the court does not presume that the plaintiff's factual allegations are true." *Id.* Rather, "the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Id.* (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)). "As always, the party invoking federal jurisdiction has the burden to prove that jurisdiction." *Id.*

B. <u>12(b)(6)</u>

To withstand a motion to dismiss for failure to state a claim upon which relief may be granted, a complaint must comply with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Rule 8(a)). A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make

5

reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

**III.    Analysis**

A.    The VPPA

The VPPA originated from a Supreme Court nomination controversy:

> Congress enacted the VPPA in response to a profile of then-Supreme Court nominee Judge Robert H. Bork that was published by a Washington, D.C., newspaper during his confirmation hearings. S. Rep. No. 100-599, at 5 (1988), reprinted in 1988 U.S.C.C.A.N. 4342-1. The profile contained a list of 146 films that Judge Bork and his family had rented from a video store. *Id.* Members of Congress denounced the disclosure as repugnant to the right of privacy. *Id.* at 5-8. Congress then passed the VPPA "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." *Id.* at 1.

*Collins v. Toledo Blade*, 720 F. Supp. 3d 543, 547 (N.D. Ohio 2024) (quoting *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 485 (1st Cir. 2016)). To state a claim under the VPPA, plaintiff must allege "(1) [defendant] is a regulated entity (a 'video tape service provider'), (2) [s]he is a protected party ([defendant']s 'consumer'), and (3) [defendant] engaged in prohibited conduct (knowingly disclosing [plaintiff]'s 'personally identifiable information' to a third party)." *Salazar v. Paramount Glob.*, --- F.4th ----, No. 23-5748, 2025 WL 1000139, at *4 (6th Cir. Apr. 3, 2025).

Under the statute, a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person. . . ." 18 U.S.C. § 2710(b)(1). A "video tape service provider" is defined as "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video

6

cassette tapes or similar audio visual materials[.]"  *Id.* at § 2710(a)(4).  A "consumer" is defined as "any renter, purchaser, or subscriber of goods or services from any video tape service provider[.]"  *Id.* at § 2710(a)(1).  "Personally identifiable information" (PII) is defined as "includ[ing] information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider[.]"  *Id.* at § 2710(a)(3).

     B.  Rule 12(b)(1)

To establish standing, the party invoking federal jurisdiction must show that she "(1) suffered an 'injury in fact' that (2) was caused by the defendant and (3) likely would be redressed by the judicial relief [s]he requests."  *Merck v. Walmart, Inc.*, 114 F.4th 762, 772 (6th Cir. 2024).  "Injury in fact," in turn, is an "invasion of a legally protected interest which is (a) concrete and particularized["] and (b) "actual or imminent, not conjectural or hypothetical."  *Id.* at 773 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  "Concrete" injury is "real" and not "abstract."  *Id.* (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024)).

Defendant argues plaintiff lacks Article III standing because she did not suffer an injury in fact.  In particular, defendant argues that the VPPA protects a substantive privacy interest in video-viewing history.  The complaint, by contrast, alleges only that defendant transmitted to Meta the fact that plaintiff paid for enrollment in an online educational course that includes, *among other things*, video content.  Defendant emphasizes that the complaint does not identify titles of videos or video material that it allegedly transferred to Meta with plaintiff's FID but only the name of the overall educational course in which she enrolled.  Defendant characterizes its subject-matter jurisdictional challenge as factual and therefore directs the Court to additional

evidence: its screen capture of a webpage identified in the source code provided in the complaint (Doc. 1 at PAGEID 5, ¶ 13). *See Global Technology, Inc.*, 807 F.3d at 810. The webpage includes a host of information about the educational course but does not include the titles of any specific video materials.

In response, plaintiff argues the complaint sets forth how the Meta Pixel works and that defendant knowingly used it. Plaintiff alleges that, by using the Meta Pixel, defendant "disclose[d] to Meta the unencrypted FID of the person who made the purchase and the subscription title or specific title of video material that the person purchased (as well as the URL where such video material is available for purchase)." (*Id.* at PAGEID 17, ¶ 63). Plaintiff argues that the Second, Third, Seventh, Ninth, and Eleventh circuits have all found Article III standing based on similar allegations.

Plaintiff also argues defendant's standing argument bleeds into the merits of her claim; and in such cases, courts are to find that Article III standing exists and evaluate a case's merits. In addition, plaintiff argues the fact that the website she accessed included more than purely video content does not deprive her of standing. Plaintiff argues that because defendant concedes (for purposes of this motion) that it is a videotape service provider, it is unnecessary to parse out whether the materials plaintiff accessed from www.ed2go.com are purely videos. Finally, plaintiff points to authority rejecting the argument that, for standing purposes, the URL at issue must display a video when visited.

In reply, defendant asserts plaintiff misconstrues its standing argument. Defendant argues the problem with the complaint is not that its websites contain both video and non-video

content (a distinction relevant to whether it is a "video tape service provider"—a characterization it presently concedes); rather, the problem is the website associated with the URL provided as an example in the complaint contains no video materials *at all*. Defendant also argues the only injury plaintiff alleges is the disclosure of her enrollment in an online educational course—not the disclosure of the fact that she "requested or obtained specific video materials or services. . . ." 18 U.S.C. § 2710(a)(3).

Since the parties briefed defendant's motion, the Sixth Circuit issued a decision in a class action case alleging a violation of the VPPA. In *Salazar v. Paramount Global*, the plaintiff began a digital subscription to 247Sports.com, a Paramount website covering sports recruiting. *Id.*, 2025 WL 1000139, at *1. The plaintiff alleged he watched videos on the website while logged into his Facebook account. *Id.* Like here, Paramount had installed a tracking Pixel on 247Sports.com, which disclosed his viewing history and FID to third parties. *Id.* Although Paramount had abandoned its standing challenge on appeal, the Sixth Circuit nevertheless addressed standing *de novo*. Siding with "every other circuit to consider the issue[,]" the Court held that the plaintiff had standing to bring the VPPA claim. *Id.* at *4 & nn.5-6.

Given its standing analysis was *sua sponte*, the Sixth Circuit did not consider the specific arguments defendant makes here. The problem with defendant's specific arguments, however, is they go directly to the merits of plaintiff's VPPA claim, i.e., is what defendant allegedly disclosed PII under the VPPA. In the Sixth Circuit, "[i]f . . . an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should '*find that jurisdiction exists* and deal with the objection as a direct attack on the merits of the

plaintiff's claim.'" *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330 (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)). Moreover, several courts considering Rule 12(b)(1) arguments like defendant's here have been unpersuaded. *See Kishore v. Times Internet (UK) Ltd.*, No. 23-cv-3594, 2024 WL 4197619, at *2 (N.D. Cal. Sept. 12, 2024) ("The Court declines the invitation to decide a factual dispute at the heart of Plaintiffs' case. . . . At this stage, the Court resolves this factual dispute in Plaintiffs' favor, and finds that the FAC sufficiently alleges that Plaintiff Kishore—as a past subscriber who watched prerecorded videos on Willow—had his personally identified information ('PII') shared with Meta by the Pixel."); *Martinez v. D2C, LLC*, No. 23-cv-21394, 2023 WL 6587308, at *2 (S.D. Fla. Oct. 10, 2023) ("[T]he Court agrees with Martinez that the bulk of Univision's argument as to standing appears to rest largely on either disputed issues of fact or the underlying merits of the Plaintiffs' claims and allegations rather than on subject-matter jurisdiction. Accordingly, the Court finds this an improper vehicle through which to challenge the Plaintiffs' standing."); *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 283 (S.D. N.Y. 2023) ("The defendants argue that the plaintiff's alleged injury is not an injury in fact because the information disclosed to Facebook does not include information protected by the VPPA. But whether the precise disclosure is actionable under the VPPA is a question about the merits of Martin's claim, rather than his ability to bring his case in federal court."); *Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 41 (D. Mass. 2023) (same); *Cantu v. Tapestry, Inc.*, No. 22-cv-1974, 2023 WL 4440662, at *5 (S.D. Cal. July 10, 2023) (concluding that screenshots similar to those used in the plaintiff's complaint here did not undermine the plaintiff's standing under the VPPA).

During the oral argument, defendant attempted to distinguish *Salazar*. Defendant argued that in *Salazar*, the plaintiff alleged he watched videos on the defendant's website, *see id.*, 2025 WL 1000139, at *1, and that particular viewing history was disclosed to a third party, which describes a violation of the VPPA. A VPPA violation, in turn, demonstrated "an invasion of a legally protected interest" for purposes of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). Defendant argues that because the information allegedly disclosed here is the fact of her enrollment in a video course (as characterized by defendant), and that information is *not* protected under the VPPA, plaintiff has not alleged the invasion of a legally protected interest required for standing.

The Court is not persuaded. As the *Salazar* court explained, in the standing analysis, courts consider "whether the asserted harm is sufficiently analogous to a traditional harm recognized by law. . . ." *Id.* at *2. Without reference to a VPPA claim specifically, the *Salazar* court went on to analogize the "disclosure of . . . private video-viewing history" to the "well-established" common law torts of "disclosure of private information" and "intrusion upon seclusion" to conclude that the plaintiff suffered a concrete injury. *Id.* at *3. Regardless of how the alleged harm is specifically characterized here, it involves the disclosure of private information. As such, the *Salazar* court's analogy to those common law torts applies with equal force in this case.

Based on the foregoing, the Court finds that it has subject-matter jurisdiction over plaintiff's complaint. Dismissal is not warranted under Rule 12(b)(1).

 C.  Rule 12(b)(6)

11

Defendant makes two overarching arguments under Rule 12(b)(6).  First, plaintiff's allegations regarding PII are insufficient.  Second, plaintiff has not alleged that defendant knowingly disclosed her PII.

      1.  *PII*

Defendant argues plaintiff fails to properly allege this element of her VPPA claim in three ways.  First, plaintiff fails to allege that the information it disclosed to Meta included specific video materials or services.  Second, the information defendant allegedly disclosed to Meta does not identify a particular person.  Third, plaintiff fails to allege a connection between these two, i.e., that plaintiff viewed the specific video materials or services.

      a.      *"Specific video materials or services"*

For its first point, defendant relies on *Martin*, 657 F. Supp. 3d 277.  In *Martin*, the plaintiff was subscriber to People.com and often watched videos on the website.  *Id.* at 282.  The defendant operated that website, which contained video content.  *Id.* at 281.  The defendant used the Facebook Pixel, which the plaintiff alleged sent "the name of the webpage viewed by a website visitor, along with the visitor's 'Facebook ID'" but not other specific data, such as when a user clicked "add to cart."  *Id.* at 282.  The *Martin* court concluded this omitted essential information for a VPPA claim, including:

> (1) whether the webpage contains a video; (2) if so, the name of the "specific video materials" on the page; (3) whether there are multiple videos on the page and, if so, which "specific video materials" were requested or obtained by the website visitor; and (4) whether the website visitor "requested or obtained" any videos at all, or instead merely read an article on the webpage.

*Id.* at 284.  As such, the *Martin* court dismissed the VPPA claim.  *Id.* at 285.

Defendant emphasizes that the URL included in plaintiff's complaint does not lead to a webpage with a video.  It argues that to find plaintiff has stated a claim under such circumstances would expand the VPPA far beyond its intended scope.

Plaintiff responds that she adequately alleges defendant disclosed URLs, which in turn identified specific prerecorded video products or services.  (*See* Doc. 1 at PAGEID 2-3, ¶ 4 ("Defendant disclosed . . . the subscription to access or the specific title of prerecorded videos that each of its customers purchased. . . ."); PAGEID 3, ¶ 4 ("Defendant captures and discloses . . . . information that reveals a particular person purchased a subscription to access prerecorded video content or a specific title of a prerecorded video on Defendant's Websites (hereinafter, "Private Viewing Information").")); PAGEID 4, ¶ 10 ("[O]n or about March 9, 2023, Plaintiff purchased prerecorded video material from Defendant's ed2go.com website. . . ."); PAGEID 13, ¶ 43 ("[T]he Meta Pixel technology that Defendant intentionally installed on its Websites transmits . . . detailed information revealing the titles and subject matter of the prerecorded videos requested or obtained by each of its purchasers. . . ."); PAGEID 17, ¶ 63 ("Defendant uses . . . the Meta Pixel to disclose to Meta . . . the subscription title or specific title of video material that the person purchased. . . ."); ¶ 64 ("Defendant intentionally programmed its Websites . . . to include the Meta Pixel code, which systematically transmits to Meta . . . the subscription or the specific title of the prerecorded video material that the person purchased."); PAGEID 18 at ¶ 66 ("At all times relevant hereto, whenever Plaintiff or any other person purchased a subscription to access prerecorded video material or prerecorded video material from Defendant on its Websites, Defendant disclosed to Meta (*inter alia*) the subscription or the specific title of the video material

13

that was purchased (including the URL where such material is available for purchase). . . ."); and PAGEID 22 at ¶ 81 ("The Private Viewing Information that Defendant transmitted to Meta . . . identified Plaintiff and Class members to Meta as an individual who purchased, and thus 'requested or obtained,' a subscription to access prerecorded video content or specific prerecorded video material from either of Defendant's Websites.").

Plaintiff distinguishes *Martin* because the plaintiff in that case alleged that the defendant used only the "Base Pixel" to track the FID and the webpage viewed; whereas here, defendant customized the Meta Pixel to track more specific information, including that a customer subscribes to content, adds content to a cart, enrolls in a program, the type of course, and the course title. *Martin*, 657 F. Supp. 3d at 282. Plaintiff argues this resolves the *Martin* court's concern that "[s]imply sending a URL of a . . . webpage . . . does not show that a person requested or obtained specific video material or services." *Id.*

In reply, defendant asserts: "Plaintiff neither *alleges the identity of the specific video materials allegedly disclosed by Cengage*—nor that she watched any specific videos on Cengage's website (or elsewhere). Confoundingly, the pleadings are completely devoid of a *single video title*." (Doc. 14 at PAGEID 111).

The Court finds that plaintiff has sufficiently alleged that defendant disclosed "specific video materials or services" as the phrase is understood under the VPPA. 18 U.S.C. § 2710(a)(3). As an initial matter, defendant's emphasis on the lack of a specific video title in the complaint does not appear warranted by the text of the statute. "Specific" is first defined in Black's Law Dictionary as "[o]f, relating to, or designating a particular or defined thing[.]"

*Specific*, *Black's Law Dictionary* (12th ed. 2024).  Defendant allegedly disclosed to Meta that plaintiff purchased a "Medical Billing and Coding" online course and that it was an "advanced career training" course, both of which denote a particular thing available at a particular URL. Along with plaintiff's other allegations that she purchased "prerecorded video material" (*see, e.g.,* Doc. 1 at PAGEID 4, ¶ 10), the Court finds that plaintiff adequately alleges that defendant disclosed to Meta that she purchased "specific video materials or services" for a VPPA claim.

In addition, other Courts considering similar complaints have not demanded "granular" specificity at the pleading stage.  *Martinez*, 2023 WL 6587308, at *3 ("Univision's insistence that a plaintiff must do more improperly conflates, on the one hand, requiring plaintiffs to allege the fact that specific titles were disclosed with, on the other, requiring that they identify the actual titles that they allege were disclosed."); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 n.8, 721 (N.D. Cal. 2023) ("Defendant also appears to argue that plaintiffs need to allege the specific video content they requested or obtained from defendant. . . .  The Court finds this argument, which defendant does not support with authority or significant analysis, unpersuasive.") ("Whether a URL sufficiently identifies a video is ultimately a factual question that should not be resolved on motion to dismiss."); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1021 (D. Minn. 2023) (collecting cases) ("[E]lectronic disclosures of a person's video-viewing history, even if not explicit, can violate the VPPA.  And most district courts that have addressed the use of Facebook Pixel specifically reached this same result in the context of Rule 12(b)(6) motions.").

For the foregoing reasons, plaintiff has adequately alleged that defendant disclosed to Meta that she "requested or obtained specific video materials or services" from defendant.  18 U.S.C. § 2710(a)(3).

    b.  *"Identifying a person"*

Defendant next argues plaintiff has not adequately alleged that disclosing a FID equates to "identifying a person" for purposes of the VPPA.  *Id.*  Defendant relies on an "ordinary person" test used in *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016), and adopted in *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017).  Under that test, "personally identifiable information under the [VPPA] means the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 290.  Defendant argues that the FID only identifies an individual when coupled with other information in Meta's possession.

Plaintiff argues that the Court is not bound to follow the Third and Ninth circuits and should adopt the broader standard set forth in *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016).  In *Yershov*, the court emphasized the definition of PII in the VPPA is plainly not limited to an individual's name—as Congress could easily have said so plainly if that were its intent.  *Id.* at 486.  Based on the plain text of the statute, the *Yershov* court concluded that "information reasonably and foreseeably likely to reveal which . . . videos [a plaintiff] has obtained" was PII for purposes of the VPPA.  *Id.*

The Court finds it unnecessary to adhere to either approach, because the result is the same under both.  Defendant (or indeed, any ordinary person) need only append an individual's FID

number sequence to "Facebook.com/" to generate that individual's Meta profile, which in turn contains an individual's name and other information. It is not necessary to combine the FID with other information in the hands of a third party or to conduct additional investigation to discover an individual's identity. *Cf. Eichenberger*, 876 F.3d at 986 (disclosure of a Roku serial number coupled with the names of videos watched "*cannot* identify an individual unless it is combined with other data in [a third party]'s possession. . . ."); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 286 (disclosure of static digital identifiers such as IP addresses did not violate the VPPA because they only revealed the identify of a particular computer and not a person). Even the *In re Nickelodeon* court acknowledged that something like a FID could be sufficient to state a claim. *See id.* at 290 ("Some disclosures predicated on new technology, such as . . . customer ID numbers, may suffice."). An FID both permits an ordinary person to identify a specific person, and is reasonably and foreseeably likely to reveal a specific person. *See Lee v. Springer Nature Am., Inc.*, --- F. Supp. 3d ----, No. 24-cv-4493, 2025 WL 692152, at *15 (S.D.N.Y. Mar. 4, 2025) (collecting cases) ("Courts have generally recognized that Facebook IDs constitute PII under the VPPA."); *Ghanaat*, 689 F. Supp. 3d at 720 (collecting cases) (footnote omitted) ("Most, if not all, courts to address the question have found at the pleading stage that Facebook IDs are PII."); *Braun v. Philadelphia Inquirer, LLC*, No. 22-cv-4185, 2023 WL 7544160, at *4 (E.D. Pa. Nov. 13, 2023) (same); *Martinez*, 2023 WL 6587308, at *4 (quoting *Sellers v. Bleacher Rep., Inc.*, No. 23-cv-00368, 2023 WL 4850180, at *4 (N.D. Cal. July 28, 2023)) ("The [Facebook ID] is a unique identifier that is enough, on its own, to identify a person.").

        c.     *Connection between the identity and the content*

Defendant next argues that plaintiff has failed to allege that it connected plaintiff's FID to her subscription to specific video materials *before* it disclosed that information to Meta—or even that defendant had access to individuals' FIDs.  It relies on *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015), for the proposition that a defendant can only be liable under the VPPA if that defendant connects the individual to his/her request for or obtaining of specific video materials or services.  *Id.* at 1096.

Plaintiff argues in response that *In re Hulu Priv. Litig.* was in the summary judgment posture.  Plaintiff argues that she alleges sufficient connection between her identity and the fact that she requested or obtained specific video materials or services.  Plaintiff points to numerous courts that have considered similar allegations at the pleading stage and found them sufficient to state a VPPA claim.  *See, e.g.*, *Feldman*, 659 F. Supp. 3d at 1021 (collecting similar VPPA cases concerning Pixel holding that "disclosed information connect[ed] the consumer to the video material the consumer requested or obtained" at the pleading stage); *Collins v. Pearson Educ., Inc.*, 721 F. Supp. 3d 274, 289 (S.D.N.Y. 2024) (collecting cases) ("The Complaint alleges: 'The disclosure of the FID is *coupled* with the title of the video the subscriber requested or obtained along with the URL for the video.' *Id.* ¶ 27.  It alleges that both sets of information are transmitted to Facebook simultaneously as a package.  Other courts, analyzing comparable if not identical allegations . . . have found an adequate connection between the user's identity and the specific video material at issue.").  The Court finds that plaintiff's allegations here are likewise sufficient at this stage.  (*See, e.g.*, Doc. 1 at PAGEID 18, ¶ 66 ("Defendant disclosed to Meta (*inter alia*) the subscription or the specific title of the video material that was purchased

(including the URL where such material is available for purchase), along with the FID of the person who purchased it (which . . . uniquely identified the person).")).

2. *"Knowingly discloses"*

Defendant next argues that plaintiff has not sufficiently alleged the mens rea for a VPPA claim, which establishes liability only for "video tape service provider[s] who *knowingly* disclose[]" PII. 18 U.S.C. § 2710(b)(1) (emphasis added). First, defendant argues plaintiffs fails to allege it ever actually possessed her FID. Second, defendant argues plaintiff fails to allege it knew Meta would connect her FID with her viewing history. Third, it argues that plaintiff fails to allege that defendant knew she had a Meta profile and FID or that plaintiff's Meta profile actually contained PII.

In response, plaintiff points to various allegations in the complaint addressing defendant's intentional behavior. (*See, e.g.*, Doc. 1 at PAGEID 13, ¶ 43 ("[T]he Meta Pixel technology that Defendant *intentionally installed* on its Websites transmits (1) the unencrypted FID for each purchaser and subscriber. . . .") (emphasis added); PAGEID 17, ¶ 64 ("Defendant intentionally programmed its Websites . . . to include the Meta Pixel code. . . ."); PAGEID 18, ¶ 65 ("Defendant knowingly and systematically provides to Meta [a person's FID]"). Plaintiff cites a series of cases finding that allegations such as those made here are sufficient at this stage of the proceedings for purposes of the knowledge element of a VPPA claim.

Defendant relies on *Eichenberger*, stating the court there rejected a VPPA claim "where the defendant 'never disclosed and apparently never even possessed' the information that would allow a third party to identify an individual." (Doc. 10 at PAGEID 74 (quoting *Eichenberger*,

876 F.3d at 986)).  The *Eichenberger* court, however, was not referring to the allegedly disclosed information; rather, it was referring to *additional* information that would have to be combined with the allegedly disclosed information to transform it into PII.

Defendant next relies on *Yoder v. Ingersoll-Rand Co.*, an invasion of privacy case, for the proposition that "[i]t is a logical impossibility for a party intentionally to disclose information that it does not know it has."  *Id.*, 31 F. Supp. 2d 565, 571 (N.D. Ohio 1997), *aff'd,* 172 F.3d 51 (6th Cir. 1998).  This case may prove persuasive after further factual development.  At this stage of the proceedings, however, the Court finds that the complaint, construed and with inferences drawn in plaintiff's favor, alleges that defendant knew that it had and was disclosing its customers' FIDs.

Finally, defendant relies on *Edwards v. Learfield Commc'ns, LLC*, in which the court granted a motion to dismiss a VPPA claim because the plaintiffs failed to allege the third party (Facebook) did or could connect FIDs with the video viewing history of those FIDs and failed to allege that the plaintiffs had PII in their Facebook profiles.  *Id.*, 697 F. Supp. 3d 1297, 1307 (N.D. Fla. 2023).  This case, however, appears to be an outlier.  Most cases that have considered similar claims have determined allegations such as those made in the complaint at bar are sufficient to state a VPPA claim.  *See Lee*, 2025 WL 692152, at *16 (rejecting arguments that the "knowingly" element was not pled because it was Pixel, not the defendant, that disclosed PII and that the defendant did not know the Pixel was transmitting an FID); *Frawley v. Nexstar Media Grp. Inc.*, No. 3:23-cv-2197-L, 2024 WL 3798073, at *9 (N.D. Tex. July 22, 2024) (quoting *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1336 (N.D. Ga. 2023) and *Adams*, 680 F.

Supp. 3d at 43, respectively) ("Defendant installed the Facebook pixel knowing it transmits [personally identifiable] information, the knowledge element of the VPPA is satisfied.") ("It is not necessary to plead that Defendant 'knew that each individual user had a Facebook account, nor whether Facebook, in fact, linked such information to particular accounts.'") (report and recommendation), *adopted*, No. 3:23-cv-2197, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024); *Li v. Georges Media Grp. LLC*, No. 23-cv-1117, 2023 WL 7280519, at *4 (E.D. La. Nov. 3, 2023) (collecting cases) (considering similar allegations to those here and noting that "[m]any other district courts have simply found that where a complaint alleges knowing disclosure under the VPPA, a motion to dismiss will not succeed."); *Martinez*, 2023 WL 6587308, at *3 ("[T]he Court is satisfied that the Plaintiffs' allegations are enough: they set forth that Univision intentionally embedded Meta Pixel on its website to disclose its subscribers' identities and video viewing histories to Meta and purposely programmed the Facebook Pixel into its website code, knowing that Facebook would receive specific video titles and the subscribers' [associated identities] when they requested or obtained videos.") (internal quotation marks and citations to the record omitted); and *Ghanaat*, 689 F. Supp. 3d at 721 ("[D]efendant fails to address or distinguish plaintiffs' contrary authority finding allegations that defendant knowingly used the Pixel, provided FIDs and URLs to Meta sufficiently alleges a knowing disclosure."). The Court agrees with the weight of authority and concludes plaintiff's allegations regarding defendant's knowledge are sufficient to state a VPPA claim.

None of defendant's arguments are persuasive. Dismissal is not warranted under Rule 12(b)(6).

**IT IS THEREFORE RECOMMENDED THAT** defendant's motion to dismiss (Doc. 10) be **DENIED**.

Date: 5/3/2025

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ALEXANDRIA HAINES, individually and      Case No. 1:24-cv-710
on behalf of all other similarly situated,      McFarland, J.
       Plaintiff,      Litkovitz, M.J.

       vs.

CENGAGE LEARNING, INC.,
       Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

23