# EXHIBIT C

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ARCHER; and TODD COHN, individually and on behalf of all others similarly situated, | Case No. 2:24-CV-10744-AB-JC |
| Plaintiffs, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [25]** |
| v. | |
| NBCUNIVERAL MEDIA, LLC and UNIVERSAL PICTURES HOME ENTERTAINMENT d/b/a GRUV.COM, | |
| Defendants. | |

Before the Court is Defendants NBCUniversal Media, LLC and Universal Pictures Home Entertainment LLC d/b/a GRUV.com's ("Defendants") Motion to Dismiss Plaintiff's First Amended Complaint ("Mot.," Dkt. No. 25). Plaintiffs Michael Archer and Todd Cohn ("Plaintiffs") filed an opposition ("Opp'n.," Dkt. No. 31), and Defendants filed a reply ("Reply," Dkt. No. 33). For the following reasons, the Court **DENIES** Defendants' Motion.

I.      **BACKGROUND**

        Plaintiffs commenced this action on December 13, 2024, and filed the operative First Amended Complaint ("FAC," Dkt. No. 19) on February 19, 2025, alleging as follows. Plaintiffs Archer and Cohn are consumers of video products and services

1

offered on Defendants' GRUV.com website. FAC ¶¶ 10, 14. Defendant NBCUniversal Media LLC ("NBCU") is a media and entertainment company operating several studio companies' distribution of filmed entertainment. *Id*. ¶ 16. Defendants Universal Pictures Home Entertainment LLC ("Universal Pictures") d/b/a GRUV.com (together, "GRUV") is a corporation operating website GRUV.com. *Id*. ¶ 17. Through the e-commerce website GRUV.com, Defendants sell prerecorded video materials to consumers, including movies, films, musicals, and more. *Id*. ¶¶ 18, 62.

The Meta Pixel is a code embedded on companies' websites allowing them to monitor and track visitors' actions, which are reported to Meta; create detailed consumer profiles; and subject customers to highly targeted advertising. *Id*. ¶ 47. When requesting or obtaining prerecorded video materials from GRUV.com, Defendants use the Meta Pixel to disclose to Meta the unencrypted Facebook ID ("FID") of the person who requested the prerecorded video material on GRUV.com, the title of the video material requested, and the URL of where to purchase the video material. *Id*. ¶ 64. By following instructions from Meta's website, Defendants intentionally programmed GRUV.com to include the Meta Pixel code, which systematically transmits such information to Meta. *Id*. ¶ 65. Before transmitting Plaintiff's private video information to Meta, Defendants did not notify nor obtain consent from Plaintiffs. *Id*. ¶ 70.

Based on these factual allegations, Plaintiffs asserts a cause of action on the grounds of violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. Now, Defendants move to dismiss Plaintiffs' sole cause of action in its entirety.

II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment . . . Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (a court may consider materials if (1) the authenticity of the materials is not disputed and (2) the plaintiff has alleged the existence of the materials in the complaint or the complaint "necessarily relies" on the materials), and *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (explaining that court may also take judicial notice of matters of public record outside of the pleadings and consider them on a motion to dismiss).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment.

1    *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,

2    1031 (9th Cir. 2008).  Leave to amend may be denied when "the court determines that

3    the allegation of other facts consistent with the challenged pleading could not possibly

4    cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393,

5    1401 (9th Cir. 1986).  Thus, leave to amend "is properly denied . . . if amendment would

6    be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir.

7    2011).

8    **III.    DISCUSSION**

9        Defendants argue that Plaintiffs failed to plead plausible facts supporting the

10   elements of its sole cause of action for violation of the Video Privacy Protection Act.

11   **A. Plaintiffs Allege the Necessary Facts to Establish a Violation of the VPPA.**

12       Section 2710(b)(1) of the VPPA states that "[a] video tape service provider who

13   knowingly discloses, to any person, personally identifiable information concerning any

14   consumer of such provider shall be liable to the aggrieved person." 18 U.S.C. §

15   2710(b)(1). "Personally identifiable information" means information that would readily

16   permit an ordinary person to identify an individual's video-watching behavior.

17   *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 981 (9th Cir. 2017). "'Consumer' means any

18   renter, purchaser, or consumer of goods or services from a video tape service provider."

19   § 2710(a)(1).

20       Thus, § 2710(b)(1) requires a plaintiff to allege that "(1) a defendant is a video

21   tape service provider; (2) the defendant disclosed personally identifiable information

22   concerning any customer to any person; (3) the disclosure was made knowingly; and

23   (4)    the    disclosure    was    not    authorized    by §    2710(b)(2)."

24   *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1063 (9th Cir. 2015) (citing 18 U.S.C.S. §

25   2710(b)(1)). In *Mollett v. Netflix, Inc.*, the plaintiff's VPPA claim failed because the

26   disclosure that plaintiff alleged was to the consumer where "Netflix displays a

27   subscriber's queue, viewing history, or recommendation lists in her online account" and

28   then "subscribers choose to display the same content on their television screens," which

is permitted by the Act. 795 F.3d at 1064.

In this case, Plaintiffs allege that Defendants violated the VPPA by disclosing Plaintiffs' private video information, including their FIDs, unique identifiers, and the prerecorded video material Plaintiffs requested from Defendants' website. FAC ¶ 87. Plaintiffs also allege that Defendants knowingly disclosed Plaintiffs' alleged private video information to a third party—Meta—through Meta Pixel technology as Defendants intentionally installed and programmed the Meta Pixel code on their websites to transmit the titles of the prerecorded video material and the consumers' unique identifiers, including FIDs. *Id.* ¶ 88. Plaintiffs assert that Defendants violated Plaintiffs' statutorily protected right to privacy by disclosing Plaintiffs' private video information to Meta without obtaining Plaintiffs' informed consent. *Id.* ¶ 89.

Defendants move to dismiss the VPPA claim on three bases: first, Plaintiffs do not allege the disclosure of personally identifiable information; second, Plaintiffs are not "consumers" under the VPPA; and third, any alleged disclosure of personally identifiable information was not done knowingly.

### 1. Plaintiffs Allege Defendants are a Video Tape Service Provider

Under Section § 2710(a)(4) of the VPPA, video tape service provider means "any person engaged in the business of rental, sale, or delivery of prerecorded video cassette tapes or similar audio-visual materials." § 2710(a)(4). *Compare Osheske v. Silver Cinemas Acquisition Co.*, 132 F.4th 1110, 1111 (9th Cir. 2025) (holding that selling tickets to and providing in-theater movie experience does not constitute video tape service provider subject to the VPPA), *with Salazar v. Paramount Glob.*, 133 F.4th 642, 656 (6th Cir. 2025) (holding that Paramount constitutes video tape service provider because "it 'engage[s] in the business' of delivering video content.").

Here, Plaintiffs allege that Defendants are video tape service providers. Defendant NBCU distributes filmed entertainment worldwide. FAC ¶ 16. Through their e-commerce websites, Defendant Universal Pictures sells prerecorded video materials to consumers, including movies, television shows, and more. *Id.* ¶ 18. Under Ninth

Circuit precedent, Defendants are video tape service providers as they sell and distribute prerecorded videos to consumers. Furthermore, Defendants do not dispute that they are video tape service providers. Accordingly, Plaintiffs adequately allege that Defendants were video tape service providers.

### 2. Plaintiffs Sufficiently Allege Defendants Disclosed their Personally Identifiable Information to a Third Party

Section § 2710(b)(1) of the VPPA, prohibits video tape service providers from knowingly disclosing consumers' personally identifiable information to any person. § 2710(b)(1). *See Eichenberger v. ESPN, Inc*., 876 F.3d 979, 986 (9th Cir. 2017) (explaining that "the term 'personally identifiable information' encompasses 'information *reasonably and foreseeably likely* to reveal which ... videos [a person] has obtained.'").

Here, Plaintiffs allege that Defendants disclosed Plaintiffs' personally identifiable information to Meta. *Id.* ¶ 45, 85. Plaintiffs allege as follows. When a Facebook-enrolled consumer requests a prerecorded video product available for purchase by adding it to their shopping cart on Defendants' e-commerce website GRUV.com, the Meta Pixel technology on that website transmits to Meta the consumer's unencrypted FID; the title(s) of the prerecorded video requested by the consumer; and the URL where the requested video is available for purchase. *Id.*

Defendants argue that Plaintiffs have not alleged that their personally identifiable information was disclosed because the information disclosed—consumers' add to cart actions—are not transaction-oriented. Motion at 6–8. Defendants heavily rely on the bill's Senate Report to support their assertion that "personally identifiable information is intended to be transaction-oriented," meaning information identifying a person that "engaged in a specific transaction with a video tape service provider." S. REP. 100-599, at 12, reprinted in 1988 U.S.C.C.A.N. 4342-1, 4342–9. However, it is important to note that the Senate Report used the term "engaged," rather than "completed" implying that consumers need not complete the purchase by checking out the items in the cart,

1    but instead may engage in a transaction regardless of whether the consumer completes

2    the purchase.

3          Further, Defendants cite *In re Hulu Privacy Litig* and *Eichenberger* to support

4    their assertion that Defendants did not disclose personally identifiable information, but

5    those cases are distinguishable from this case as the information disclosed needed to be

6    combined with other data to link plaintiffs' information to their identity. *See In re Hulu*

7    *Privacy Litig.*, 86 F. Supp. 3d 1090, 1091 (N.D. Cal. 2015) (finding no evidence that

8    defendant knew social-networking website could combine user's identity, contained in

9    c_user cookie, with the watch-page address to yield personally identifiable

10   information); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017)

11   (holding that plaintiff failed to state a claim under Rule 12(b)(6) because "an ordinary

12   person could not use the information that Defendant allegedly disclosed to identify him"

13   without combining other data in Adobe's possession that ESPN never disclosed nor

14   possessed). In this case, Defendants' disclosed Plaintiff's personally identifiable

15   information by transmitting a combination of Plaintiffs' FIDs—identifying Plaintiffs;

16   and video titles and URLs—revealing the video materials obtained or requested by

17   Plaintiffs—to Meta.

18         Contrary to Defendants' assertion, *Cook* and *Popa* are distinguishable from this

19   case because defendants only disclosed the products plaintiffs were interested in

20   purchasing without including plaintiffs' identity. *See Cook v. GameStop, Inc.*, 689 F.

21   Supp. 3d 58, 62 (W.D. Pa. 2023) (finding that defendant did not disclose plaintiff's

22   personally identifiable information as everything plaintiff did on website was

23   anonymous and any information that retailer intercepted related to plaintiff's product

24   preferences, not personal information); *see also Popa v. PSP Grp., LLC*, No. C23-

25   0294JLR, 2023 WL 7001456, at *4 (W.D. Wash. Oct. 24, 2023) (finding that defendant

26   disclosed "nothing more than the products that interested Ms. Popa and thus is not the

27   type of private information that the law has historically protected."). In this case,

28   Defendants disclosed Plaintiffs' identity by transmitting their FIDs to Meta along with

1    information on the video materials.

2        Thus, it follows that Plaintiffs properly alleged that Defendants disclosed

3    Plaintiff's personally identifiable information to Meta by transmitting their FIDs, video

4    titles, and video URLs to Meta when a consumer added a video to their shopping cart.

5    **3. Plaintiffs Allege Defendants Knowingly Disclosed Consumers' Personally**

6    **Identifiable Information**

7        Under § 2710(a)(1) of the VPPA, a consumer includes "any renter, purchaser, or

8    subscriber of goods or services from a video tape service provider." § 2710(a)(1).

9    Plaintiffs allege that Defendants are consumers of the video products and services

10   offered on GRUV.com as they requested prerecorded video material on GRUV.com by

11   adding the videos to their carts and purchasing the videos. FAC ¶¶ 10, 14. In the Motion,

12   Defendants assert that GRUV could not have known if Plaintiffs were consumers when

13   the Meta Pixel technology transmitted Plaintiffs' information to Meta because the

14   disclosure took place before Plaintiffs made purchases. Motion at 18. Defendants

15   explain that "the actual purchase, rental, or subscription of video materials…qualifies a

16   person as VPPA consumer, not actions that come before or afterwards." *Id.* at 12.

17   Further, Plaintiffs were not yet consumers when their personally identifiable

18   information was allegedly disclosed to Meta. *Id.* at 17.

19       Here, according to Defendants' understanding of the term "consumer," Plaintiffs

20   could only become consumers protected by the VPPA if Plaintiffs' made a purchase

21   and then Defendants disclosed their personally identifiable information. Plaintiffs allege

22   that Defendants disclosed their personally identifiable information while videos were

23   in their cart before they purchased the videos. FAC ¶ 64. Whether the disclosure came

24   before or after Plaintiffs' purchase is nonconsequential as Plaintiffs' purchases qualify

25   them as consumers regardless of whether Meta Pixel transmitted the personally

26   identifiable information to Meta before or after Plaintiffs' purchases. The Court's broad

27   reading of "consumer" aligns with the purpose of the Act, protecting consumers' video

28   privacy where "the consumer lacks control over the dissemination of the information at

issue." *Mollett v. Netflix, Inc.,* 795 F.3d 1062, 1065 (9th Cir. 2015). Therefore, it follows that Plaintiffs' sufficiently allege they were consumers under the statute.

The VPPA prohibits video tape service providers from knowingly disclosing consumers' personally identifiable information to any person. § 2710(b)(1). *See Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 47 (2d Cir. 2025) (finding that FITE knowingly disclosed personally identifiable information about Solomon to Facebook, such as computer code that denoted titles and URLs of the videos Solomon accessed and her FID). Plaintiffs allege that Defendants knew the Meta Pixel disclosed to Meta whenever a person requested a specific prerecorded video by title for purchase on GRUV.com as Defendants programmed the website to systematically disclose users' information to Meta. FAC ¶¶ 68, 69. In their Motion, Defendants argue that GRUV did not knowingly disclose consumers' personally identifiable information because it was not aware that after the Meta Pixel technology transmitted Plaintiffs' information to Meta, Plaintiffs would purchase the video materials. Motion at 17.

As explained above, Plaintiffs were consumers regardless of Meta Pixel technology transmitting the information before Plaintiffs made their purchases, and thus Defendants' scienter argument fails for the same reason its consumer argument fails. Moreover, Defendants knew they were sharing video preferences of all users, including people who would become purchasers and people who were simply browsing, which is enough to establish knowledge that Defendants were sharing the purchasing preferences of consumers. Therefore, Plaintiffs sufficiently allege that Defendants knowingly transmitted consumers' information—including Plaintiffs' personally identifiable information—to third party Meta.

### 4. Plaintiffs Allege the Disclosure Was Not Authorized by § 2710(b)(2)

The VPPA provides three exceptions to the disclosure prohibition, allowing disclosure of a consumer's video rental history to the consumer himself, third parties when the consumer has provided written consent, or the third party has obtained a warrant or court order. § 2710(b)(2). Here, Plaintiffs allege that the disclosure was not

1 authorized by § 2710(b)(2) because Defendants did not notify nor obtain consent from

2 Plaintiffs before transmitting Plaintiff's private video information to Meta. *Id*. ¶¶ 21,

3 27, 70.  Therefore, the non-consensual disclosure was not authorized by § 2710(b)(2).

4 **IV.  CONCLUSION**

5 For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss

6 because Plaintiffs' sole cause of action for violation of the VPPA alleges the necessary

7 facts to establish a VPPA claim. The Parties are Ordered to meet and confer and file an

8 amended Joint Rule 26(f) Report within 21 days of this Order.

9 **IT IS SO ORDERED.**

11 Dated: July 2, 2025

_____

HON. ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT JUDGE

10