# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| ALEXANDRIA HAINES, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) | |
| ) | No.  1:24-cv-00710-MWM |
| v. ) | |
| ) | Hon. Matthew W. McFarland |
| CENGAGE LEARNING, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## STIPULATED ORDER ON ESI PROTOCOL

Before the Court is a stipulation for the entry of an Order governing the discovery of electronically stored information ("ESI") in the above-referenced matter. The Court having reviewed the stipulation, hereby orders the following:

1) **PURPOSE**

This Stipulated Order will govern discovery of ESI in this case as a supplement to the Federal Rules of Civil Procedure, the Local Rules for this Court, and any other applicable orders and rules.

2) **GENERAL PRINCIPLES**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

Nothing in this Stipulated Order shall be interpreted to require disclosure of information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Except as expressly provided herein, the parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of any particular documents or ESI.

1

This Stipulated Order may be modified in the Court's discretion or by agreement of the parties for good cause shown. If the parties cannot resolve their disagreements regarding these modifications, the parties shall seek a resolution pursuant to the Federal Rules of Civil Procedure and this Court's local rules governing discovery disputes. This Stipulated Order may only apply to the parties in this matter.

3)      **DEFINITIONS**

   a.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure.  The term "Document" shall include Hard-Copy Documents, Electronic Documents, and ESI, as defined herein.

   b.     "Electronic Document or Data" means Documents or Data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g. Microsoft Word), computer presentations (e.g. PowerPoint slides), spreadsheets (e.g. Excel), image files (e.g. PDF), chat applications, text messages, and other ephemeral data sources.

   c.     "Hard-Copy Document" means Documents existing in paper form at the time of collection.

   d.     "Native Format" means and refers to the format of ESI in which it was generated and/or as used by the producing party in the usual course of its business and in its regularly conducted activities. For example, the native format of an Excel workbook is .xls or .xlsx.

   e.     "Near-Native Format" means and refers to the format of ESI that

2

preserves the functionality, searchability, and integrity of a Native Format item when it is infeasible or unduly burdensome to produce the item in Native Format, including where redactions to an otherwise Native Format item are made. For example, an MBOX is a suitable near-native format for production of Gmail, an Excel spreadsheet is a suitable near-native format for production of Google Sheets, and EML or MSG files may be suitable near-native formats for production of individual e-mail messages. Static images are not near-native formats for production of any form except Hard-Copy Documents.

f.      "Metadata" means (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, created during the course of processing documents or ESI for production, and (iv) information collected during the course of collecting documents or ESI, such as file names, file paths, system dates, name of the media device on which it was stored, or the custodian or noncustodial data source from which it was collected.

g.      "Optical Character Recognition" or "OCR" means the process of recognizing and creating a file containing visible text within an image.

3

**4)      PRESERVATION**

The parties have discussed their preservation obligations and preservation needs, and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

1.      The parties shall abide by their common law obligations to preserve relevant documents and information;

2.      Pursuant to section 5 below, the parties will exchange a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "Compliance head," "IT manager," and "marketing manager," etc.  The parties may add or remove proposed custodians;

3.      The parties will meet and confer regarding the custodians for whom ESI will be preserved;

4.      The parties will disclose any data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and whether ESI from these sources will be preserved but not searched, reviewed, or produced.

**5)      ESI DISCLOSURES**

Prior to conducting searches for ESI in response to discovery requests, and in conjunction with negotiations on discovery requests, each party shall disclose within a reasonable amount of time:

4

1. <u>Custodians</u>. The names, title, and roles of custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2. <u>Non-custodial Data Sources</u>. A list of non-custodial data sources (e.g., shared drives, servers, internal messaging applications), if any, likely to contain discoverable ESI.

3. <u>Third-Party Data Sources</u>. A list of third-party data sources, if any, likely to contain discoverable ESI (e.g., third-party email providers, mobile device providers, cloud storage, messaging providers) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4. <u>Inaccessible Data</u>. A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

5. Documents and ESI from identified custodial and non-custodial data sources will be preserved pending identification of data to be produced in this litigation.

6. Parties have a continuing obligation to identify any other custodial and non-custodial data sources likely to contain discoverable ESI and

5

preserve them.

## 6) SEARCH METHODOLOGY

The parties agree that in responding to discovery requests, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery, such as whether to use search terms.

If search terms are requested by the Requesting Party, the parties must meet and confer in good faith regarding search terms and queries, file types and date restrictions, data sources and custodians. The parties shall continue to cooperate in revising the appropriateness of the search methodology, such as by the producing party providing hit count reports. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and provide a counter proposal as to revised searches or queries. In the event the parties are unable to reach agreement on search terms, including as to the breadth of proportional document review efforts, the parties shall consider in good faith the possibility of a phased approach to document review and production efforts.

This Order does not preclude a Requesting Party from seeking information pertaining to a Producing Party's network design, types of databases, database dictionaries, access control lists and security access logs and rights of individuals to access systems and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

If a Party elects to use technology-assisted review or other advanced technology-based analytics to cull unstructured ESI, the parties will meet and confer regarding the parameters that will apply.

6

To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon an appropriate form of production and potential methods of generating a report in a reasonably usable and exportable electronic file format for review by the Requesting Party. Upon review of the exported electronic file(s), the Requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields. A potential approach to discovery involving structured database materials may involve the parties meeting and conferring upon a set of queries to be made for discoverable information within the database.

A producing party may always conduct a manual review for responsiveness and privilege, whether or not search terms or technology-aided review is also utilized.

**7) PRODUCTION FORMATS**

***Principles applicable to all productions of ESI and hard-copy documents***

a.    The parties agree to make rolling productions.

b.    Documents will be produced to the requesting party in the formats addressed below under "Principles applicable to ESI" and "Principles applicable to hard-copy documents."

c.    Each document file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces.

d.  Only responsive and relevant attachments need to be produced. Non-responsive and non-relevant attachments may be withheld unless necessary to provide full context to the parent document or one or more of the other

responsive and relevant attachments. If any single attachment to a document is responsive, then the parent document, unless privileged, shall be produced for context, regardless of the parent document's responsiveness. Document level extracted text or OCR for documents without extracted text will be provided by the producing party for every record, including for scanned hard copy documents as described above.  Extracted text will not be provided for electronic documents that have been redacted because the extracted text would reveal the redacted information. Instead, these files will be OCRed to capture the visible text and those results will be provided in lieu of the original extracted text.

e.      The Parties are not obligated to populate manually any of the metadata fields set forth below if such fields cannot be reasonably extracted from a document. The parties reserve the right to request additional metadata fields should the party show good cause for the necessity of such additional metadata.

f.      The parties agree that this Stipulated Order does not preclude a party from requesting the production of documents by inspection of hard copy documents as they are kept in the usual course of business.

g.      Confidentiality: The parties have entered into a protective order in this matter which specifies various confidentiality treatment levels for use in this case. The confidentiality treatment level for any item will be provided with the created data for that item, in the field entitled "Confidentiality Treatment." For items with no confidentiality requirements, the field will be left blank.

The producing party will brand any confidentiality endorsement in a corner on any PDFs or TIFF images representing the produced item. Those endorsements must be in a consistent font type and size and must not obscure any part of the underlying image or Bates number.

***Principles applicable to ESI.***

h.    The parties agree that, except as provided herein or otherwise agreed upon by the parties, ESI shall be produced in PDF, native, or single-page Group IV TIFF, 300-dpi format. Such productions shall be accompanied by Opticon and IPRO load files (or other generally acceptable load file format) that contains metadata fields identifying natural document breaks and also includes companion OCT and/or extracted text files. Each PDF, native, or TIFF file shall be given a unique file name that matches the Bates number label on first page of the document.

i.    Documents with hidden content, such as spreadsheets or presentations, shall be produced in native with all content unhidden and notes displayed. If it must be produced in TIFF, it shall be processed with all content unhidden and any notes displayed on the TIFF image. The Parties reserve all rights to meet and confer to request production of documents with hidden content in an alternate format.

j.    If a document is more than one page, the parties shall make reasonable efforts, consistent with reasonable industry practices, to provide the logical unitization of the document, any attachments, and/or affixed notes as they exist in the original document.

9

k.      The full text of each electronic document shall be extracted or OCRed ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

l.      The Parties agree to produce documents using the Eastern Standard Time Zone.

m.      A producing party may de-duplicate electronic documents and is not obligated to extract or produce entirely duplicate ESI. Removal of duplicate documents shall only be done on either (1) exact duplicate documents based on MD5 hash values across custodians, or (2) emails that contain the same content, sender and recipients as other messages despite not having matching MD5 hash values such that they would be identified as "email duplicate spare messages" by the Relativity document review platform or an equivalent designation in an alternative document review platform.  However, family relationships will be maintained and only exact email family groups, including email duplicate spare messages or equivalents, will be de-duplicated.  No email attachment will be de-duplicated against a loose file.  Global de-duplication across the entire collection will be employed.  This eliminates duplicates to retain only one copy of each document per case.  For example, if an identical document resides with three custodians, only the first custodian's copy will be included in the review set. The custodian field will list each custodian, separated by a semicolon, who was a source of that document, or alternatively the Producing Party may utilize a

10

separate "All Custodians" field which identifies all custodians of the subject document.

n.    In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize threading or "email thread suppression." As used in this Protocol, email thread suppression means employing commercially acceptable methods to reduce production of duplicative email threads by producing only the inclusive email messages and their attachments from each email thread. An email message is inclusive when it contains any non-duplicative content or has a document or set of documents attached that does not appear elsewhere within the email thread. Typically, an inclusive email will be either the longest, most recent in time email message containing all of the text from previous, earlier in time email messages within that same thread or an email message with attachments not otherwise attached to a later in time email within that same thread, but any email will be treated as inclusive when it contains non-duplicative content. Non-relevant email within otherwise relevant inclusive threads will typically be produced for context unless redaction of confidential or privileged information is necessary. Accordingly, exact duplicates of emails as well as email messages comprised of text identical to text contained within an inclusive email in the same conversation will be suppressed and not produced, however responsive, non-duplicative attachments will be produced along with their conveying email message even when the text of that parent email message is fully represented in a longer, later in time email thread.

11

o. The parties agree that the fields of metadata in Exhibit A shall be preserved, collected, and produced, only to the extent it is reasonably accessible and non-privileged. This list of metadata is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

p. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and audio or video, will be produced in native format, or near-native format. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents.

q. The original native files, or near-native files as appropriate, should be produced in addition to a single-page TIFF placeholder for each document. The placeholder should be endorsed with "Native Format Document," and endorsed with the Bates number assigned to that document. The produced native file should be named with the Bates number assigned to that document. Any confidentiality or other designations stamped on the placeholder for such a document shall apply to the entire native file and its contents. For documents whose native format is MS Power Point, the original native files shall be produced with any comments and color preserved. The produced native file should be named with the beginning Bates numbers assigned to that document. The parties will meet and confer upon the other types of files that are not easily converted to image format and will therefore be produced in native format.

12

r.  The relative path to the native file should be included in the delimited text file and the produced files should be organized in a "NATIVES" folder in the production media.

s.  All documents, native ESI, photographs, and video shall be produced in color if stored in color. Documents produced in color shall be produced as JPEG images, 300 dpi or higher and 24-bit color depth.  Except as already specified herein, the parties agree to make a good faith effort to comply with reasonable and specific requests for the production of higher resolution or color images.  Nothing in this order shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read.  The producing party shall have the option of responding by producing a native-file version of the document.  If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

*Principles applicable to hard-copy documents.*

t.  The parties agree that documents existing in hard copy form should be produced in single-page Group IV, 300-dpi TIFF format and accompanied by an Opticon and IPRO load file (or other generally acceptable load file format).  Each TIFF file will be given a unique file name that matches the Bates number label on the corresponding page.  The accompanying load file shall contain, at a minimum, (a) ProdBeg, (b) ProdEnd, and (c) custodian name, to the extent available.  The full extracted or OCR text should be

13

included and produced at a document level and located in the same folder as their respective document image or OCR/TEXT folder.

u. The parties agree that documents existing in hard copy form may be produced in searchable PDF if the parameters in paragraph (t) are unduly burdensome and not proportionate to the needs of the case. Each PDF file will be given a unique file name that matches the Bates number label on the first page of the document.

v. The parties will undertake best efforts to unitize documents correctly. In scanning hard-copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).

w. Text of hard-copy documents shall be extracted using industry-standard OCR technology. Text files shall not contain the redacted portions of the documents.

x. Responsive hard copy documents shall not be eliminated as duplicates of responsive ESI.

## 8) DOCUMENTS PROTECTED FROM DISCOVERY

The obligation to provide a log of privileged or work product materials presumptively shall not apply to: (a) Attorney work product created by Outside Counsel for the Parties regarding this litigation created after the filing of the first complaint; (b) Internal communications within Outside Counsel for the Parties regarding this litigation created after the filing of the first complaint; (c) Communications between Outside Counsel and the party they represent regarding this litigation after the filing of the first complaint. The parties agree

14

to confer regarding other categories of information that may be excluded from logging requirements.

The Parties agree that, except as provided herein regarding presumptively privileged documents and ESI, they will produce privilege logs and will exchange information regarding claims of privilege and/or work product protection within 30 days of a production.

For documents and ESI that have been withheld as privileged, the withholding or redacting Party shall provide a privilege log of such documents and ESI, providing the following objective metadata to the extent it is reasonably available: date, author(s), custodian(s), recipient(s), file type, and subject (to the extent the subject does not reveal protected content). In addition, the withholding Party shall also provide for each document on their privilege log an identifier for the privilege being asserted (e.g., "ACP" for attorney client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed) and the document's Bates numbers.

Documents redacted for privilege need not be logged as long as (a) for emails, the bibliographic information is not redacted and (b) for non-email documents, the redaction is noted on the TIFF image.

The parties reserve the right to request additional information regarding individual documents on the privilege log.

### a.  Limitations and Non-Waiver

Pursuant to the Federal Rules of Civil Procedure, the production of a privileged or work-product-protected documents, electronically stored information, or information, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  Nothing contained within this paragraph is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information

15

(including metadata) for relevance, responsiveness, confidentiality and/or segregation of privileged and/or protected information before production.

**9)** **MODIFICATIONS**

      a.     Any practice or procedure set forth herein may be varied by agreement of the Parties, and first will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data or other covered discovery materials.

      b.     Should any Party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the Parties will meet and confer to resolve any dispute before seeking Court intervention.

      **IT IS SO ORDERED.**

Dated:    _____

                              _____

                              Hon. Karen L. Litkovitz
                              Magistrate Judge

AGREED TO BY:

| | |
|---|---|
| */s/ Elliot O. Jackson* | */s/ Jennifer Snyder Heis* |
| Elliot O. Jackson (admitted *pro hac vice*) | Jennifer Snyder Heis (0076181) (Trial  Attorney) |
| Florida Bar No. 1034536 | Kevin M. Bandy (0095721) |
| **HEDIN LLP** | UB GREENSFELDER LLP |
| 1395 Brickell Ave., Suite 610 | 312 Walnut Street, Suite 1400 |
| Miami, Florida 33131-3302 | Cincinnati, OH 45202 |
| Telephone: (305) 357-2107 | Telephone: (513) 698-5058 |
| Facsimile: (305) 200-8801 | Fax: (513) 698-5001 |
| ejackson@hedinllp.com | jheis@ubglaw.com |
| | kbandy@ubglaw.com |

                              Matthew C. Wolfe (admitted *pro hac vice*)

16

**O'CONNOR, HASELEY & WILHELM LLC**

Daniel J. O'Connor Jr.
Ohio Bar No. 91397
O'Connor, Haseley & Wilhelm LLC
470 W. Broad St., Suite 15
Columbus, OH 43215
Telephone: (614) 572-6762
Facsimile: (614) 937-8872
doconnor@goconnorlaw.com

*Counsel for Plaintiff and Putative Class*

Nicholas R. Hazen (admitted *pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., Suite 4700
Chicago, IL 60606
Telephone: (312) 704-7700
Fax: (312) 558-1195
mwolfe@shb.com
nhazen@shb.com

Jenn O. Hatcher (admitted *pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816) 421-5547
jhatcher@shb.com

*Counsel for Defendant, Cengage Learning, Inc*